THE CITY OF PLATTSBURG, Appellant, v. THE PEOPLES' TELEPHONE COMPANY, Respondent.

**Kansas City Court of Appeals, April 1, 1901.**

1. **Municipal Corporations:** TELEPHONE FRANCHISE: JULIAN LAW: PETITION. A petition, the sufficiency of which is questioned on the ground that it is based upon the Julian law, relating to the granting of a franchise to telephone companies (and declared to be void) is held to state a cause of action, since it does not appear to have been based on said act, and the plaintiff, a city of the fourth class, has power to regulate the use of the streets for telephone purposes and may charge a reasonable sum for such use without regard to the Julian law.

2. ———: ———: COMPETITIVE BIDDING: STREET SUPERVISION. A city has jurisdiction over and is charged with the maintenance of its streets; and a telephone company is properly made to pay for any right it may obtain over the rights of the public in general, and a city may express its regulating power by contract and determine the worth of the franchise by competitive bidding. State ex rel. v. St. Louis, 145 Mo. 551, considered and followed.

3. ———: ———: TAXES: RENTAL. Where a city contracts for a sum to be paid by a telephone company for the use of the streets, it is not a tax and its name is immaterial as long as it is in the power of the municipality.

4. ———: ———: CORPORATIONS: PARTNERSHIPS: STATUTE. While the statute relating to telephone corporations gives them the right to erect telephone poles in the streets, it does not deny the right to individuals or foreign corporations, and these latter have the right to engage in such business, and a municipality may contract with them in regard to a compensation for the use of its streets. State ex rel. v. Flad, 23 Mo. App. 185, distinguished.

Appeal from Clinton Circuit Court.—*Hon. Alonzo D. Burnes,* Judge.

REVERSED AND REMANDED.

*H. T. Herndon* for appellant.

(1) It was within the power of the plaintiff city to contract for the payment of the premium sued for. State ex rel. v. St. Louis, 145 Mo. 551; St. Louis v. Tel. Co., 148 U. S. 102; City of St. Louis to use v. Von Phul, 133 Mo. 561; Dillon on Mun. Corp. (4 Ed.), sec. 706. (2) The defendants can not raise the question of *ultra vires* because the contract in controversy is executed. Dairy Co. v. Mooney, 41 Mo. App. 665. (3) The defendants are estopped from denying the validity of their contract with the city. City of St. Louis v. Davidson, 102 Mo. 149. (4) The city having the right to grant the franchise or to refuse it, furnishes a sufficient consideration for the contract. Fath v. Railroad, 105 Mo. 537. The Act of 1895 (Session Acts, p. 53), confers no new power upon municipal corporations, but is merely prohibitory in its character.

*W. S. Herndon* for respondent.

(1) The petition shows on its face, that the proceedings therein set forth were based on the law of 1895, known as the "Julian Law," and that the sale of the so-called franchise, was

made according to the provisions of that law.    Under that law
the plaintiff could only sell the right to use the streets thereof,
for the purposes mentioned, to the bidder who would give the
largest percentage yearly of the gross receipts derived from such
use and occupation.    Laws 1895, p. 53.    The Supreme Court
of this State, held the "Julian Law" void.    State ex inf. Crow
v. Railroad, 146 Mo. 155.    The alleged contract, which the
plaintiff seeks to enforce in this case, is afflicted with all of the
weaknesses of its parent statute.    State ex inf. Crow v. Rail-
road, supra.    (2) It is claimed by the appellant that the city
had the power to make the sale of the so-called franchise, even
though the law of 1895, known as the "Julian Law," was void.
If it has any such power it must be contained in the statute con-
stituting its charter, either expressly or by necessary implica-
tion.    St. Louis v. Telephone Co., 96 Mo. 623; Railway v.
Railway, 105 Mo. 562; Knapp v. Kansas City, 48 Mo. App.
485; Gas Light Co. v. Mercer, 48 Mo. App. 644; City of Jop-
lin v. Leckie, 78 Mo. App. 8.    The "Julian Law," being void
the defendants in this case and their grantors had the legal
right to place its poles and wires in the streets and alleys of the
city, subject to reasonable regulations, without purchasing the
same from the city.    It was a proper use of the streets by them
as citizens.    Laws 1895, p. 78, sec. 67; Building Ass'n v. Tele-
phone Co., 88 Mo. 258; Schopp v. City of St. Louis, 117 Mo.
136, 137.    (4) A power to sell necessarily includes the power
to prohibit, but the power to regulate does not include the power
to prohibit. 17 Am. and Eng. Ency. of Law (2 Ed.), p. 286;
Ex parte Reynolds, 78 Ala. 138; Ex parte Sykes, 102 Ala.
173; Sweet v. Wabash, 41 Ind. 8; Hill v. Owens, 23 Ga. 203.
(5) As against a telephone company, organized under the laws
of this State, the city could have no right of way over, along,
etc., its streets and alleys, which it could sell or grant, by ordi-
nance or otherwise, "for the purpose of erecting, maintaining

and operating a telephone system in said city." It could only interfere with the use of its streets and alleys for such purpose, by dictating three things: (a) the place where the posts, piers or abutments shall be located; (b) the kind of posts that shall be used; (c) the height at which the wires shall be run, or permit them to be run under ground. R. S. 1899, secs. 1251, 1260; State ex rel. v. Flad, 23 Mo. App. 186; Hannibal v. Telephone Co., 31 Mo. App. 23; State ex rel. v. Murphy, 134 Mo. 548; Laws 1895, p. 78, sec. 67; Laws 1895, pp. 80, 81, sec. 74.

ELLISON, J.—Plaintiff is a city of the fourth class, and as such it granted to defendants' predecessors, a telephone company, for two per cent of its gross earnings, a franchise or right to construct and operate in its streets for twenty years a telephone system in said city. These defendants purchased of said predecessors. The grant was made on sufficient notice by a public bidding of a rate per cent of gross earnings which would be paid by those seeking the privilege of constructing and operating the system in such city. It was not an exclusive right. Defendants' predecessors and defendants themselves are not corporations, but are partnerships.

Plaintiff's petition set out the facts with the ordinance bearing thereon giving the right to erect the necessary poles in the streets and string wires thereon, and then declared that the company had accepted the privilege or franchise and had built and operated its line thereunder for more than a year; but that it had refused to file with the clerk of the city a statement of its gross earnings as required by the ordinance granting the privilege, and that it refused to pay the two per cent of such earnings required by the ordinance. The petition then further alleged such earning to be $2,600, and that two per cent thereof was $52, for which judgment was asked. A demurrer to the peti-

tion was interposed and sustained on the ground that a cause of action was not stated. Plaintiff refused to amend and after judgment appealed to this court.

It is argued by defendant that the contract here sued upon represents and is based upon a franchise granted under the laws of 1895, page 53 (commonly known as the Julian Law), which provided as a condition precedent to granting the request for a right or franchise for certain purposes, telephone plants being among them, that the municipality should sell the right to the highest bidder of the yearly gross receipts. That law was declared to be void for uncertainty. State ex inf. v. Railroad, 146 Mo. 155. It is therefore claimed that this case must fail.

We have no means of ascertaining whether the right was granted these defendants under that law or not. Nor does it make any difference, if what was done is valid without reference to that act. We therefore do not consider the fact that that act of the Legislature is void and was never in force necessarily affects the present controversy. That act made it obligatory on municipalities to dispose of the rights therein named for a money charge to be ascertained in a certain way, viz.: a certain portion of gross receipts to be bid at a public letting. But the power of a municipality to govern its affairs and to regulate the use of public utilities in connection with its streets and alleys, existed before the enactment of the law aforesaid; and, since that law is declared to be void and of no effect, the same power now exists. We will therefore consider the case unaffected by that law.

In our opinion the petition stated a good cause of action and the demurrer thereto should have been overruled for the following reasons:

The plaintiff city is organized under the charter laws governing cities of the fourth class found in session acts of 1895, pages 65-90, which has been carried into the revision of 1899

without change with respect to the matters herein considered. By provision of section 5957, Revised Statutes 1899, the city, through its mayor and board of aldermen has the "care, management and control of the city and its finances." It has the "power to enact and ordain any and all ordinances not repugnant to the Constitution and laws of this State, and such as they shall deem expedient for the good government of the city, the preservation of peace and good order, the benefit of trade and commerce * * *." By provision of section 5960, it has the power "to regulate the erecting of telephone, telegraph and electric light poles" in the streets of the city. Telephones and telephone poles are referred to in section 5967, Revised Statutes 1899, but only as a part of a waterworks plant necessary to be used in connection therewith. Without making further specific references to particular parts of the charter law, it is evident that municipal corporations, such as cities of the fourth class, have general control and charge of their streets with power to protect the citizens from danger, to abate nuisances and to regulate their proper use. The use of a street in a municipal corporation for placing telephone poles and stringing telephone wires is a proper and legal use. Julia Bldg. Ass'n v. Telephone Co., 88 Mo. 258; Schopp v. City of St. Louis, 117 Mo. 136.

The reasons for sustaining the power of regulation are ample. Our municipalities are under the necessity of looking out for the public safety and they are liable for damages resulting from defects, nuisances or obstructions in their streets. Under its general police power it has therefore a right to supervise the erecting of poles and stringing of wires to see that they are safe and that the proper precautions are taken. They have the right to provide for inspection and that proper care be taken and repairs be speedily made, and for this purpose a proper and reasonable annual license or charge may be made. Croswell on

Electricity, sec. 830; City of Allentown v. Tel. Co., 148 Pa. St. 117; Philadelphia v. Tel. Co., 167 Pa. St. 406.

Again, the municipality itself, or its citizens, are at the expense of opening, improving and maintaining streets and when the space of any portion of them is taken up or used exclusively by a telephone company it should be made to pay for such right which it obtains over and above the rights of the public in general. Under this power the city may embrace such regulation in a contract, that is to say, its power may be expressed contractually, and may be for a definite period of time. Under the power to regulate, reasonable conditions may be imposed and these may embrace money charges for such use; the amount determined upon, or to be ascertained, may properly be the subject of contract. Having the power to demand compensation for the privilege, we can not discover any objection to the mode here adopted for fixing upon the sum to be charged. By public bids cities are enabled better to ascertain what the privilege is worth and the public interests are perhaps better subserved.

We regard our views of this question as sustained by the Supreme Court in the case of State ex rel. v. St. Louis, 145 Mo. 551. That case concerned the making of ways and the laying of wires beneath the surface of the streets, but the discussion of the principles of law involved embrace this case. By the terms of section 1251, article 6, Revised Statutes 1899, telephone and telegraph companies are given the right to set their poles and string their wires in the streets of cities and with the consent of the cities, to place their wires beneath the surface. While it is necessary to obtain the consent of a city to place wires under the surface at all and is not necessary (unless as to which particular street) to obtain such consent above the surface, it might be thought that a charge could well be made for the use where consent is necessary and could not be made where

the right exists without such consent. But in the latter instance, while the right exists without consent, it is a right (like many others) subject to regulation, and the power to regulate includes the power, not to prevent, but to impose conditions such as a money charge. And so it was held in St. Louis v. Telegraph Company, 148 U. S. 92; s. c., 149 U. S. 465.

The sum agreed upon in this case, viz., two per cent of the gross earnings of the plant, is not a tax on the property of defendants. It is a sale or rental of necessary portions of the streets of the city for a specified time, for the purpose of carrying on a business in which defendants had a right to engage. And it makes no practical difference what the contract of sale or rental may be called by the parties, whether a franchise or other name, so long as its scope does not reach outside and beyond the power of the municipality.

As above observed, the statutes of this State (section 1251, article 6, Revised Statutes 1899) by general provision give the right to *corporations* organized under that article to erect telephone poles in the streets of the cities of the State. But that statute does not deny the right to individuals, or to corporations organized outside this State. There is, therefore, no reason why the power possessed by the municipality may not be exercised by contracting with an individual. The business, as just stated, is a business in which any individual or individuals may engage, but it happens to be of such nature as to require the use of a part of the property of the municipality, and being a use which the municipality may, under its powers, dispose of, nothing appears in the record to show that it has not been done legally.

The foregoing views are not in conflict with the point decided by the St. Louis Court of Appeals in State ex rel. v. Flad, 23 Mo. App. 185. The question in that case was whether the board of public improvements of the city of St. Louis could

impose conditions on telephone companies other than those imposed by the statute of the State and *ordinances of the city,* and it was properly held that it could not. It is not necessary for us to consider whether we approve of some things said *arguendo* in that case.

The judgment will be reversed and the cause remanded. All concur.