## CITY OF LANCASTER, Appellant, v. BRIGGS & MELVIN, Respondents.

### Kansas City Court of Appeals, June 4, 1906.

1. **MUNICIPAL CORPORATIONS: Telephones: Regulation: Construction.** The use of the streets and alleys of the city to carry poles and wires for the operation of a telephone exchange is proper and legal but subject to regulation, which carries with it the power to impose a money charge as a condition.

2. ——: ——: ——: ——: **Tax.** An ordinance imposing a stated percentage of the gross receipts as a condition to the use of the street by a telephone company is not a tax or demand of sovereignty but is a demand of proprietorship and constitutes a contract, and is to be construed according to the mutual intention of the parties, as shown by its language.

3. ——: ——: ——: ——: **Gross Receipts.** An ordinance required a telephone company to pay the city 2 per cent per annum of the gross receipts collected for the use of said telephone system.

Lancaster v. Briggs & Melvin.

*Held*:

　　1.　That the company was not liable for a percentage of the earnings of its systems outside the territorial limit of the city.

　　2.　It was liable for the percentage of the earnings from all sources of the system within the city, including rentals of the telephone instruments and the percentage received by the company of the proceeds of tole line business that require service within the city.

　　3.　For reasonable value of the services rendered by the exchange in the transmission of long distance business.

4.　————: ————: ————: **Contract: Ordinance: Appellate Practice.** Granting that the statute requiring contracts with municipalities to be in writing and signed by the parties applies to an ordinance of the city regulating a telephone franchise, still as the matter was not raised in the trial court it can not be raised on appeal.

Appeal from Schuyler Circuit Court.—*Hon. Nat. M. Shelton,* Judge.

REVERSED AND REMANDED.

*P. O. Sansberry* and *Higbee & Mills* for appellant.

(1)　The court erred in excluding evidence offered by plaintiff of the defendants' receipts in excess of the receipts reported by them.　(2.) The court erred in excluding evidence offered by plaintiff of defendants' receipts for tolls and charges in addition to receipts for rent of defendants' telephones.　(3) The contract is explicit that defendants are to pay two per cent of their gross receipts.　The court, therefore erred in limiting the evidence to rentals received from telephones. Plattsburg v. Telephone Co., 88 Mo. App. 306.　(4)　The tax agreed to be paid was for the privilege of transacting business in plaintiff city.　This includes messages sent to points outside the city.　That is as much a part of defendants' business for which the franchise was granted as the renting of telephones within the city.　Western Union Tel. Co. v. Fremont, 39 Neb. 692, 58 N. W. 415.

*C. C. Fogle* for defendants.

(1)   Plaintiff is given power, by the statute, to regulate the erecting of telephone, telegraph and electric light polls, in the streets of the city. R. S. 1899, sec. 5960.   (2)   The use of the street in a city for placing telephone polls and stringing telephone wires, is a proper and legal use. Bldg. Assn. v. Telephone Co., 88 Mo. 258; Schoop v. St. Louis, 117 Mo. 136.   (3)   Under this statute, above cited, the plaintiff may, so long as its scope does not reach outside and beyond the power of municipality, charge for the use of its streets for telephone polls, and it makes no particular difference what the contract of sale or rental may be called, by the parties whether a franchise or other name. Plattsburg v. Tel. Co., 88 Mo. App. 313.   (4)   It is clear that the city could not charge for messages sent from the city to points without the city, or upon messages coming from points out of the city to the city. Tel. Co. v. Tel. Co., 96 U. S. 1; Tel. Co. v. Texas, 105 U. S. 460; Tel. Co. v. Board, 132 U. S. 472; Tel. Co. v. Pa., 128 U. S. 39, 27 U. S. 640; Raterman v. Tel. Co., 127 U. S. 411; Com. v. Stodder, 2 Cush. 562; Express Co. v. Seibert, 44 Fed. 310; Tel. Co. v. Fremont, 58 N. W. 415.   (5)   The right to charge tolls or to make an agreement with the other companies for the use of their polls, wires and other appliances are franchise rights, derived from the state alone, and with which the city has no concern. St. Louis v. Tel. Co., 96 Mo. 623; State ex rel. v. Railway, 140 Mo. 531; Dillion on Municipal Corporation (4 Ed.), sec. 724; State ex rel. v. St. Louis, 145 Mo. 574.

JOHNSON, J.—Plaintiff, a city of the fourth class, brought this action to recover two per cent of the gross receipts derived by defendants from the operation of a telephone exchange in the city during the period beginning June, 1, 1900, and ending January 1, 1905. A de-

murrer to plaintiff's evidence was sustained and plaintiff appealed.

The right of plaintiff to receive two percent of the gross receipts of the exchange during the period mentioned is predicated upon an ordinance of the city, which it is alleged in the petition and shown in proof was approved December 17, 1898, and which it is alleged was immediately accepted and acted upon by defendants who built and operated the exchange under the terms of the agreement thus expressed. The ordinance was admitted in evidence and the first section thereof provides, "that a right, franchise and privilege to erect, maintain, operate and use a telephone system for a period of twenty years within the present and future corporate limits of the city . . . is hereby granted to Robert W. Briggs and Winfred Melvin (defendants), their heirs, etc., upon the following conditions: In consideration of the grant of franchise herein stated the said Briggs and Melvin agree to pay to the city . . . two per cent per annum of the gross receipts collected from the use of said telephone system, the same being payable quarterly, and they shall present the city treasurer's receipts therefor. . . . together with a sworn statement of the gross receipts from said telephone system during that quarter . . The parties to whom the franchise is hereby granted shall have the right to use the public streets and alleys, highways and public grounds of said city for the erection of poles and wires and all other necessary appliances for the successful construction and operation of said telephone system." The next section fixes the maximum rates that defendants may charge "for the use of a telephone in said system for the first five years" and then follows a section requiring defendants to give a "bond with approved security . . . for the construction and operation of said system and for payment of all moneys due the city from the owners and operators of said system and for full compliance with the ordinance

herein granting said franchise." The ordinance contains other stipulations, but those detailed suffice for the consideration of the questions now before us.

Defendants filed the required statements and paid to the city the sums shown in them to be due under the ordinance, but it is contended by plaintiff that items of revenue earned by the business and received by defendants were omitted and this suit is for the recovery of two per cent of the aggregate of such omitted items. It is conceded by defendants that the receipts reported were confined to those derived solely from the rental of telephones in the city and it is argued by them, and this was the view taken by the learned trial judge, that the ordinance imposed no other burden on defendants than to pay to the city two per cent of the gross receipts from such rentals, while plaintiffs insists that the words "gross receipts collected from the use of said telephone system" include earnings received from "long distance" service rendered by defendants to their patrons as well as rentals collected for telephones used in the city.

The use of the streets and alleys of a city to carry the pole lines and wires necessary to the operation of a telephone exchange is a proper and legal use. [Plattsburg v. Telephone Co., 88 Mo. App. 306; Julia Bldg. Ass'n v. Telephone Co., 88 Mo. 258; Schopp v. St. Louis, 117 Mo. 136; California v. Telephone Co., 112 Mo.App. 722.] But the exercise of the right to such use is subject to regulation by the municipality and the power to regulate carriers with it the power to impose a money charge as a condition to the enjoyment of the right. [Authorities, supra; St. Louis v. Telegraph Co., 148 U. S. 92.]

An ordinance accepted and acted upon by its grantees, which provides that in consideration of the granting of the right so to use the public streets the grantees are to pay to the city a stated percentage of the gross receipts derived from the conduct of their business, does not impose a tax, but, as was said in the case of City of Plattsburg v. Telephone Co., supra, is to be construed as

"a sale or rental of necessary portions of the streets of the city for a specified time for the purpose of carrying on a business in which defendants had a right to engage." The charge imposed is not to be regarded as a demand of sovereignty, but as a demand of proprietorship. [St. Louis v. Telegraph Co., supra.] These conclusions require us to look upon the accepted ordinance as a contract which both parties thereto had the legal right to make and, in the interpretation of the term in dispute, a controlling influence must be accorded to the mutual intention of the parties to be collected from the language of the instrument and from the circumstances in which it was made.

Evidently, it was not intended that the charge provided should apply to proceeds received by defendants from the operation of telephone lines or exchanges outside the present or future limits of the city. In the term "gross receipts collected from the use of said telephone system," the last three words refer to a system "within the present and future corporate limits of the city." This clearly appears from the context and leaves no room for doubt that the city agreed to restrict its charge to the earnings of that part of defendants' system within the territory over which the city exercised jurisdiction. Therefore, if defendants operated long distance lines connecting Lancaster with other cities and towns over which they conducted a toll business, or as a part of their business operated exchanges in neighboring towns, the earnings of such divisions of their telephone system would not be subject to the charge under consideration. But it equally is as clear the parties intended that the earnings from all sources of the system within the city should be included in the term "gross receipts." These earnings, it is fair to assume in the state of the case before us, consisted not only of rentals paid for the use of telephone instruments in the city but also included a percentage received by defendants of the proceeds of toll line busi-

ness that required the services of the Lancaster exchange in its transaction. All such income actually received by defendants under contracts with the owners of independent connecting lines on account of the service of the Lancaster exchange in the transmission or delivery of long distance business certainly belongs to the gross receipts of that exchange and with respect to tolls received by defendants for long distance service over lines and exchanges operated entirely by them, the reasonable value of the services rendered by the Lancaster exchange to that class of business should be regarded as a part of the gross receipts of that exchange. This is the plain meaning of the contract and we perceive no good reason for withholding the enforcement of the manifest intention of the parties. In answer to the argument that the city was without power, even by contract, to levy tribute on the earnings of lines and exchanges beyond its territorial limits, we have already observed that the contract so restricts the imposition of the charge and consequently the question is here without practical importance. The city is entitled to its percentage of all of the earnings of that exchange received from all classes of patronage and to nothing more, and the court erred in its interpretation of the term "gross receipts."

Further, it is argued by defendants that the judgment should be affirmed for the reason that under section 6759, Revised Statutes 1899, the ordinance and defendants' acceptance thereof were required to be in writing and signed by the parties and that these facts are neither pleaded in the petition nor proven. Conceding for argument that this statute applies to the subject in hand, we find that the substance of the ordinance and the facts of its passage, approval and acceptance by defendants are all pleaded in the petition and that no objection to the sufficiency of the petition was made by motion or demurrer. At the trial, plaintiff introduced the ordinance in evidence and proved the facts of its approval, but did not make formal proof of its acceptance

by defendants nor of the fact that ordinance and acceptance were in writing, etc.　The case, however, was tried by both parties and the court on the assumption of the existence of all facts necessary to make the ordinance a valid contract between the parties as will appear from this extract from the proceedings:

Counsel for plaintiff: "We offer to show by the witness that they received various sums during the years mentioned in the petition amounting to some thousand dollars a year in excess of the sums from the telephones in the City of Lancaster."

Counsel for defendants: "We object, it is not within the provisions of the ordinance — of the contract existing between the plaintiff and defendant."

Counsel for plaintiff: "Do you say that you made returns for the year prior to 1900?"

Counsel for defendants:

"Yes, sir, made returns for every year."

Defendants waived the objection and will not be permitted to profit by it now.　Being made here for the first time, it comes too late.

The judgment is reversed and the cause remanded. All concur.