## Ex parte HOLT.

No. 9490—Opinion Filed Oct. 1, 1918.

Rehearing Denied Feb. 11, 1919.

(178 Pac. 260.)

**1. Licenses—Control of Streets—Public Vehicles.**

"Under section 8, art. 4, c. 173, Sess. Acts 1915, local authorities, such as cities, may 'regulate vehicles offered to the public for hire,' and in doing so may impose a license or fee when the purpose thereof is an exaction of regulation." Ex parte Mayes, 64 Okla. 260, 167 Pac. 749.

**2. Same—Validity of Ordinance—Regulation as Primary Object.**

The character of a municipal ordinance passed and sought to be inforced ostensibly for the purpose of regulation may be primarily determined from all its provisions; and where no attempt appears thereby to raise revenue, as such, the only pecuniary charge imposed being designed merely to cover the expense of regulating an occupation which it is deemed desirous or necessary to subject to inspection and supervision in the interest of public welfare and safety, such charge will not be treated as a tax for revenue.

**3. Same—Conflict with State Law.**

Ordinance No. 1968 of the city of Okla-

homa City examined, and held not to contravene the provisions of the General Highway Law of 1915.

### 4. Dismissal of Habeas Corpus.

The writ of habeas corpus is discharged.

(Syllabus by Bleakmore, C.)

Application of William Holt for writ of habeas corpus. Writ discharged.

Giddings & Giddings, for petitioner.

B. D. Shear, A. T. Boys, E. E. Blake, and W. M. Howenstein, for respondent.

Opinion by BLEAKMORE, C. This is an original proceeding by which William Holt prosecutes a writ of habeas corpus to inquire into his arrest and restraint by W. B. Nichols, chief of police of the city of Oklahoma City, for violation of an ordinance of said city alleged to be void.

By its charter the city of Oklahoma City is given power to enact and enforce ordinances upon any subject not inconsistent with the laws of the state, etc.

The ordinance in question, No. 1968, passed and approved September 20, 1917: (1) Defines the term "motor vehicles"; and (2) provides that the owners of such vehicles offered to or used by the public for hire shall register same with the city clerk; (3) that an application be filed with such clerk, naming the owner and driver of each such vehicle, the purpose for which it is offered to or used by the public, the number assigned it by the department of highways, the serial number of its engine, etc.; (4) that there shall be issued to the owner by the city clerk a nontransferable certificate, in duplicate, which shall be carried by the driver subject to being displayed to any patron or police officer at any time; (5) that such vehicles shall at all times be subject to inspection, and, if found defective or unsafe for public use, shall not be operated until repaired; (6) that if such vehicle is used in violation of the laws of the United States or the state or ordinances of the city, the certificate issued by the clerk shall be revoked, etc.; (7) that certain persons are disqualified as drivers; (8) that a report be made of any change in drivers, which shall be registered; (9) that bond in the sum of $250, conditioned that the owner will respond in damages for injury occasioned by his negligence, shall be given; (10) at the time of such registration of such motor vehicle, and at the time of the issuance of the certificate therefor by the city clerk, and for the purpose of defraying the expenses of the police supervision and inspection and the issuance of the certificates herein provided for, there shall be paid to the city clerk for each motor vehicle so used, a fee of $25 for first car and $20 for each additional car, which fee shall cover the expense of such registration, supervision, regulation, and control of such motor vehicle under the provisions of this ordinance until the expiration of the ensuing fiscal year; (11) that any violation of the provisions of such ordinance shall constitute an offense, for which penalty is provided.

It is urged by the petitioner that such ordinance is void, and his arrest and restraint for violation thereof unlawful, for the reason that by virtue of the provisions of the General Highway Law of the state, chapter 173, Session Laws 1915, the city was powerless to pass or enforce the same.

The pertinent provisions of the Highway Law are found in sections 3 and 8 of article 4, and are as follows:

"Sec. 3. * * * The registration fees imposed by this article upon motor vehicles, other than those of manufacturers and dealers, shall be in lieu of all taxes, general or local, to which motor vehicles may be subject as personal property under the laws of this state. * * *

"Section 8. Subject to the express provisions of this article, local authorities shall have no power to pass, enforce or maintain any ordinance, rule or regulation requiring from any owner to whom this article is applicable any tax, fee, license or permit for the free use of the public highways, or excluding or prohibiting any motor vehicle registered in compliance with this article from the free use of the public highways or the accessories used thereon, and no ordinances, rule or regulation in any way contrary to or inconsistent with the provisions of this article, now in force or hereafter enacted, shall have any force or effect; provided, that the powers given to local authorities in cities of the first class to enact general rules and ordinances applicable equally to all vehicles and users of the highway, to bring about the orderly passage of vehicles upon certain streets in such cities, where the traffic is heavy and continuous, and the powers given to local authorities to regulate vehicles offered to the public for hire or for processions, assemblages or parades in the streets or public places shall remain in full force and effect; and provided further, that local authorities may set aside a special public highway or highways for speed contests or races to be given under proper restrictions for the safety of the public; and provided further, that local authorities may exclude by ordinance or regulation motor trucks and motor vehicles used exclusively for commercial purposes, from the parks and parkways of this state,

provided such ordinance or regulation is applicable equally and generally to all other vehicles used to the same purpose: and provided further, that local authorities may exclude motor vehicles from any cemetery or ground used for the burial of the dead: and provided further, that cities and towns may regulate the speed of motor vehicles."

Obviously, by reason of the legislative enactment, supra, there was withdrawn from municipalities generally the power to pass, enforce or maintain any ordinance, rule or regulation imposing a pecuniary charge in the nature of a tax, license, or permit for the free use of the public highways by motor vehicles which have been registered in compliance therewith (Ex parte Shaw, 53 Okla. 654, 157 Pac. 900; Ex parte Phillips, 64 Okla. 276, 167 Pac. 221; and Ex parte Mayes, 64 Okla. 260, 167 Pac. 749); but by virtue of the first proviso in section 8, the office of which is at least to restrict the general language preceding it (Brewer v. Rust, 20 Okla. 776, 95 Pac. 233), "the powers given to local authorities to regulate vehicles offered to the public for hire * * * remain in full force and effect."

Thus it appears that where a motor vehicle has been registered conformably to the statute, a city may under no circumstances impose a pecuniary charge either upon the vehicle or its owner for the use of the public highways but whenever such vehicle is offered to the public for hire, however strictly the foregoing proviso may be construed, the intent of the Legislature to reserve to and authorize the exercise by municipalities of the powers elsewhere given to local authorities to regulate vehicles so offered is manifest.

The power of regulation granted to the city in the instant case clearly carried with it authority to use all lawful means to accomplish the purpose of the grant.

"As an incident to this form of police regulation it is reasonable and just that the expenses be paid by those who make them necessary, and it is not unusual to require a fee from every person who seeks to engage in an occupation to perform an act of this character as a condition to the issuance of a license or permit to engage in the occupation or perform the act." 19 R. C. L. 951.

In Ex parte Mayes, supra, it is held:

"Under section 8, art. 4, c. 173 Sess. Acts 1915, local authorities, such as cities, may 'regulate vehicles offered to the public for hire,' and in doing so may impose a license or fee when the purpose thereof is an exaction of regulation. But when the primary object of the local legislation is to afford a revenue, the ordinance pursuant to which

the same is levied is invalid and cannot be enforced."

While the rule is well settled that unless authority to tax be granted, pecuniary impositions by municipalities for revenue purposes under the guise of the police power cannot be made, yet the doctrine is almost universally recognized that although revenue may incidentally result from the undisputed exercise of police power by a municipality acting within the scope of its authority to regulate occupations or the use of property, this result does not divest the regulation of its police character and render it an attempted exercise of the taxing power. In Ex parte Mayes, supra, it was said:

"Government should have for its end the welfare, convenience, and advantage of its citizens, and the advancement of their material, intellectual, and moral interests. One of its important obligations, if not its most important, is the protection of life and limb and the property and good morals of the public. That particular and inherent power of the state which has for its purpose the accomplishment of these results is known as the police power. It includes and comprehends within its exercise all those general laws and internal regulations which are necessary . to secure the peace, good order, health, and comfort of society. * * * Broadly speaking, it may be said that the state through the exercise of its police power has the right to control and regulate the conduct of the citizens and the use of their property so long as such regulation and control has for its purpose and aim the protection and care of life and property. As members of society the citizens of the state or community owe to their neighbors, and to all who may be interested or affected, the use of their property, and the exercise of what might be considered otherwise as natural and inalienable rights, in such a manner as not to injure or interfere with either their rights or their property.

"The state has the power as a means to an end namely, the better exercise of the police power, to impose a fee or license upon property used in a certain manner or upon certain callings or occupations. Ordinarily the state has no right under this power to impose license fees for the purpose of revenue without regard to the question of the regulation, control, or use of such property or occupation. The imposition of license fees, having for their purpose the better regulation and control of such occupations, or the use of certain property, is valid as coming within the proper exercise of the police power when they are imposed not for the purpose of obtaining a revenue but for the ostensible one. As concrete illustrations of the valid imposition of license fees, we find, upon an examination of the authorities, that ordinances or regulations

have been held valid licensing vehicles, those engaged in certain occupations, hackmen, draymen, expressmen, and others engaged in carrying passengers, baggage, or freight. If the charge for such license or permit is greater than necessary to cover the cost of the regulation or inspection, such charge will undoubtedly be held unreasonable and the ordinance imposing the same invalid, upon the theory that the police power cannot be invoked or exercised as a general means of raising revenue. * * *

"The purpose of the highway act, or at least one purpose, is to take from the municipal authorities the power to levy and collect a tax for the use of the public highways, and that whether the tax be levied upon the vehicle, upon the owner, or upon the occupation in which he is engaged. The power to regulate and control, though in the form of a tax and where the revenue to be collected is incidental to the regulations is recognized as an existing right of the local authorities. This, we think, is clear."

We must further inquire whether the ordinance under consideration is a proper exercise of the regulatory police power granted to the city by its charter and reserved to it by the Highway Act of 1915, or is designed for the purpose of revenue.

The character of an ordinance such as the one here involved is to be determined from all its provisions; and where no attempt appears thereby to raise revenue, as such, the only pecuniary charge imposed being designed merely to cover the expense of regulating an occupation which it seems desirous or necessary to subject to inspection and supervision in the interests of the public health, morals, or safety, such charge cannot be treated as a tax.

The declared and, as we think, primary purpose of the city, evidenced by the provisions of the ordinance in question, was the regulation of vehicles offered to the public for hire. This being true, the exaction of a fee to cover the expenses to be incurred in properly effectuating its regulatory provisions would not render such ordinance in any sense a revenue measure, or the fee imposed a tax, unless the amount of such fee be disproportionate to the expense which it is ostensibly designed to cover.

In McQuillin on Municipal Corporations, vol. 3, § 1002, it is said:

"Where the execution is imposed under the power to regulate or in the exercise of the police power, as distinguished from the power to tax for revenue, as heretofore explained, the general rule obtains that the sum levied cannot be excessive or more than reasonably necessary to cover the costs of granting the license and proper police regulation."

It seems clear that the exact amount necessary to meet such expenses cannot in every case be ascertained in advance, and an attempt to require this to be done would be futile. The rule seems to be that if the fee imposed in such instances is not plainly unreasonable, the courts will not interfere with the discretion exercised by the municipal authorities in fixing it; and, unless the contrary appears on the face of the ordinance itself, or is established by evidence, the presumption will be indulged that such fee is reasonable. In the instant case we cannot say as a matter of law from the face of the ordinance itself that the fee imposed by section 10 thereof is in excess of the expense necessary to be incurred in carrying into effect the other provisions which are manifestly regulatory. Again, incorporated in the record is certain testimony relative to the cost of the registration, inspection, and supervision of the vehicles sought to be regulated, and it appears therefrom that the requisite expense of the clerical work, mechanical inspection, and supervision will perhaps equal, if not exceed, the amount derived from the payment of the fee exacted. We therefore conclude that the ordinance in question is not in contravention of the General Highway Act of 1915, but is a proper exercise of the regulatory police power specifically reserved by that act to be exercised by a local authority, such as the city of Oklahoma City, and that the arrest and restraint of the petitioner for violating the provisions of such an ordinance was lawful. The writ should be discharged.

By the Court: It is so ordered.