W. R. WILHOIT ET AL., PLAINTIFFS-APPELLANTS, v. CITY OF SPRINGFIELD, MISSOURI, A MUNICIPAL CORPORATION ET AL., DEFENDANTS-RESPONDENTS.—171 S. W. (2d) 95.

Springfield Court of Appeals, May 3, 1943.

W. D. *Tatlow* and *Kirby W. Patterson* for appellants.

*W. H. Brown* and *Alfred Page* for respondents.

FULBRIGHT, J.—This is a suit in equity by W. R. Wilhoit and ninety-four other persons as plaintiffs against the City of Springfield, Missouri, a Municipal Corporation, Harry Carr, its Mayor, Herschel Bennett, its Commissioner of Revenue and Warren J. Hayes, its Chief of Police, as defendants. Judgment for defendants and plaintiffs appeal.

The cause was originally heard at our October, 1942 Term. The case was assigned to the writer and an opinion handed down thereon. Both plaintiffs and defendants filed motions for a rehearing which were by the court overruled. Whereupon, the court, on its own motion, granted a rehearing which was had at the March, 1943 Term and the case was again assigned to the writer.

Defendants contend that the amended petition upon which the case was tried is not sufficient to warrant this court in passing upon the issues raised on appeal. Reading the petition as a whole we deem

it amply sufficient, and since the petition and answer are lengthy documents we shall not encumber the opinion by setting them out at length.

The bill prays that general ordinance No. 147, of the City of Springfield, authorizing the installation of parking meters and charging a fee for parking be declared null and void and that defendants be perpetually enjoined from enforcing the provisions of said ordinance.

Plaintiffs are citizens, tax payers and residents of the City of Springfield, and property owners and proprietors of business establishments on Commercial Street in said city, and bring this action for themselves and in behalf of all other persons similarly situated. The ordinance in question provides for the installation of parking meters on such streets in the city as are designated for their use. Spaces wide enough to accommodate a car are marked next to the curb and opposite each space there is set in the curb or sidewalk a metal post about three inches in diameter and about three and a half or four feet in height and having a clock-like instrument attached to the top of each post which is set in operation when the motorist drops in a coin. The instrument indicates the prescribed parking time limit. Each meter is equipped with a flag within the housing thereof. If the operator of a car deposits 5c in a meter the flag disappears and will not appear again until the expiration of one hour in the one-hour zone and two hours in the two-hour zone. If a penny is inserted the time is proportionately shorter when the warning flag appears. An officer notes overtime and tickets the car.

The ordinance creates zones limiting parking of one and two hours. The one hour zone prohibits anyone from parking his automobile in the indicated area without first depositing a 1c coin if he desires to stay only twelve minutes, or a 5c coin if he desires to stay one hour. In the outlying zones the motorist is permitted to stay twenty-four minutes by depositing 1c and two hours by depositing 5c.

There was considerable evidence offered by plaintiffs in an attempt to show that the revenue derived from the fees charged for parking were greatly in excess of the increased expense incident to substituting meters for the old method and the cost to the city of maintaining the meter system; and that through the fees collected thereby it was the purpose of the city to reduce other taxes and especially the gasoline tax within the corporate limits.

This is the first parking meter case, so far as we are able to discover, that has reached an appellate court in this State. Consequently, we have no precedent to follow and our Statutes are silent as to the method to be used by cities in regulating parking.

The defendant, City of Springfield, is a city of the second class and has the power to regulate and control the use of streets and the parking of vehicles thereon and has wide discretion in the exercise of such

powers as set forth in Sections 6609 and 8395, Revised Statutes Missouri, 1939.

Paragraph 11 of Section 6609, *supra,* empowers cities of the second class to establish, open and construct streets, avenues, boulevards, sidewalks and alleys, and to regulate the use thereof. Paragraph 72 thereof provides among other things, that in addition to the powers enumerated and conferred in other provisions of said section "the council shall have further power to pass, amend and repeal all ordinances; all rules and police regulations not inconsistent with the constitution and laws of the United States and the Constitution of this State", and "to exercise all municipal powers necessary and proper for the management and control of municipal property and affairs, whether such powers be expressly enumerated herein or not, it being intended by said article to grant and confer upon said cities of the second class full powers of self-government not inconsistent with the provisions of this article and the general statutes or the constitution of the State of Missouri."

Section 8395, *supra,* among other things provides: (b) Municipalities may by ordinance make additional rules of the road or traffic regulations to meet their needs and traffic conditions, and to regulate the parking of vehicles on streets.

That cities have the authority to regulate parking under its police power is not open to question so long as they are not unreasonable in their regulatory measures. [Baker v. Hasler, 274 S. W. 1095.] They may designate streets or parts of streets within its limits upon which parking shall either be prohibited absolutely or else restricted to a limited time; "and so long as the ordinance is reasonable and necessary for the public safety, the courts will have no recourse but to enforce it, if no other obstacle to its validity exists." [City of Clayton v. Nemours, 164 S. W. (2d) 935; Cavanaugh v. Gerk, 313 Mo. 375, 280 S. W. 51.]

When a city is given the power to do a certain thing it is necessarily left with large discretion as to the method to be adopted and the manner in which it is to be done. [Arkansas-Missouri Power Corp. v. City of Kennett et al., 348 Mo. 1108, 156 S. W. (2d) 913; City of Tarkio v. Cook, 120 Mo. 1, 25 S. W. 202; Ex parte Smith, 231 Mo. 111, 132 S. W. 607.]

Plaintiffs contend that the installation of parking meters is an unreasonable restriction of their rights as abutting owners. It is true that an abutting owner has the same right to the use of the street that the public has, and, in addition he has the special right of ingress and egress. [Schopp v. City of St. Louis, 117 Mo. 131, 22 S. W. 898.] But, as we view it, the ordinance places no greater limitation upon the rights of abutting owners than the system of parking regulation in effect long prior to its adoption. Be that as it may, the right of the abutter is subject to the power of the city to regulate and control

its public streets and to regulate parking in the interests of the public safety and good order so long as the regulations do not unreasonably interfere with his rights. Personal and property rights of an individual are subservient and subordinate to the general welfare of society and the community at large and an ordinance which is fairly referable to the police power and has for its object "the greatest good of the greatest number", is not invalid so long as it does not contravene the Statute and does not deprive the individual of any right or privilege guaranteed by the Constitution, State or Federal. [Bellerive Inv. Co. v. Kansas City, 321 Mo. 969, 13 S. W. (2d) 628; City of Clayton v. Nemours, *supra*; Ex parte Harrison (Tex. Cr. App.), 122 S. W. (2d) 314; Harper v. City of Wichita Falls (Tex. Civ. App.), 105 S. W. (2d) 743.]

What is reasonable is tested largely by what is ordinary usage and knowledge gained by common experience. It is a matter of common knowledge that very exact rules and regulations are adopted by both state and city governments to control motor traffic in congested centers and on streets and highways carrying heavy traffic. The same not only being necessary but imperative for the safety of the traveling public. [Commissioner of Palisades Interstate Park v. Lent, 240 N. Y. 1, 147 N. E. 228.]

As stated in the case of Gilsey Buildings, Inc., v. Incorporated Village, 11 N. Y. S. (2d) 694, l. c. 699, ". . . If plaintiff may enjoin the defendant from permitting parking for one hour in front of its premises because the time is measured by a parking meter, then parking for a like period may be forbidden, when timed by a policeman. And if plaintiff may do this because it wishes absolutely free and unobstructed access to and from the highway at all times, so can its neighbor, and its neighbor's neighbor, and thus as each abutting owner claimed the enforcement of this 'right', even reasonable parking in cities and villages could be forbidden everywhere by private individuals, a result not to be contemplated."

We are in accord with the reasoning in the case of Kimmel v. City of Spokane, 109 Pac. (2d) 1069, l. c. 1071. We quote:

". . . We fail to see what difference it can make to either the traveler on the street or to the occupant of abutting property whether the time limitations be enforced by a policeman marking cars with a piece of chalk or by a mechanical device that registers 'Time's up' in a way that all may see. The object of both is to prevent overtime parking, and, of the two, it seems to us that the latter is more effective. With the latter, there are no minutes of grace as there are with the policeman while he is making his rounds 'marking' and 'checking up', for the time begins to run when the car is parked, and ends when the meter registers 'Time's up'. That parking meters will diminish the vice of overtime parking and, consequently, speed up traffic, seems a certainty, for the car must be moved at the expiration of the time

limited. 'Repeating' by deposit of another coin is not permitted. We are convinced that Ordinance C6860, providing for their installation and maintenance, is a valid exercise of the city's police power.''

From the foregoing observations it is our conclusion that the ordinance with which we are concerned, providing for the zoning of the streets of the city or parts thereof, placing time limits on parking and providing for the installation of parking meters for measuring the time, is a valid exercise of the city's police power and does not illegally or unreasonably interfere with or wrongfully deprive plaintiffs of any right or privilege that they may have as abutters. [Cavanaugh v. Gerk, *supra*; City of Clayton v. Nemours, *supra*; Bellerive Inv. Co. v. Kansas City, *supra*; Baker v. Hasler, *supra*; Schopp v. City of St. Louis, *supra*; McGill v. City of St. Joseph, 225 Mo. App. 1033, 38 S. W. (2d) 725; Wagner v. City of St. Louis, 284 Mo. 410, 224 S. W. 413; Roper v. Greenspon, 272 Mo. 288, 198 S. W. 1107; Ex parte Duncan, 179 Okla. 355, 65 Pac. (2d) 1015; City of Columbus v. Ward, 65 Ohio App. 522, 31 N. E. (2d) 142; Gilsey Buildings, Inc. v. Incorporated Village, *supra*; City of Louisville v. Louisville Auto ·Club, 290 Ky. 241, 160 S. W. (2d) 663; City of Bloomington v. Wirrick, 45 N. E. (2d) 852.]

The next issue to be determined is whether the defendant city has authority to exact a parking fee as provided by Sections 65-D and 65-E of the ordinance in controversy, and if so, whether the fees charged and collected are so excessive as to constitute the ordinance a revenue measure in fact. The first proposition. must be determined by the application of what is known as the Motor Vehicle Act. The first section of said act, 8366, R. S. Mo., 1939 (Mo. R. S. A.), is as follows:

''This article shall be exclusively controlling on the registration, regulation, operation, ownership and sale of motor vehicles, their use on the public highways and upon the registration and regulation of chauffeurs, operators, and other drivers of motor vehicles, . . . and all laws, ordinances, or regulations of municipal corporations, or political subdivisions in conflict, inconsistent with, or contrary to the provisions of this article shall be void, except as herein otherwise expressly provided.''

Section 8367 thereof defines the word ''Highway'' as, ''Any public thoroughfare for vehicles including state roads, county roads and public streets, avenues, boulevards, parkways or alleys in any municipality.''

Sub-section ''b'' of Section 8395, *supra*, provides:

''Municipalities may, by ordinance, make additional rules of the road or traffic regulations to meet their needs and traffic conditions; . . . regulate the parking of vehicles on the streets and prohibit or control left hand turns of vehicles; . . . No ordinance shall be valid which contains provisions contrary to or in conflict with this article except as herein provided.''

Sub-section "c" of said section 8395, provides:

"Municipalities may, by ordinance, levy and collect license taxes from the owners of and dealers in motor vehicles and trailers residing in such municipalities, . . . But such license taxes shall not exceed the limitation on registration fees, now or hereafter provided by law, exclusive of any driver's license fees, including the cost of plate or sticker and notarial fee. . . . And provided further, that when the owner of any motor vehicle or trailer, or chauffeur or registered operator shall have complied with the requirements of this article he shall not be required to pay any license tax or fee to any municipality, or submit to any other requirement, except as authorized by this article, in any municipality of this State: . . ."

Sub-section "b" delegates to the city the power to regulate the parking of vehicles on the streets. This grant of authority carries with it broad discretionary power and under the word "regulate" the city may invoke all the reasonable and necessary police powers it may have in enforcing its control over the streets, and particularly with respect to the parking of vehicles. [Roper v. Greenspon, *supra*; McGill v. City of St. Joseph, *supra*.]

As we view it the Legislature did not intend by the enactment of sub-section "c" to abrogate, abridge, restrict or limit the police power delegated to the city and that the provisions of the said sub-section "c" do not prevent the collection of a fee that is merely incidental and referable only to the police power, and enacted only for the purpose of purchasing, installing, maintaining and enforcing such regulatory provisions. Such fee is not in the nature of a tax as that term is ordinarily used; nor is it a rental fee, but is a fee or charge referable solely to the police power of the city to regulate parking and is to be used for the purposes above enumerated. [City of Lamar v. Weidman, 57 Mo. App. 507; Ex parte Smith, *supra*; City of St. Louis v. Klausmeier, 213 Mo. 119, 112 S. W. 516; State v. Broeker, 11 S. W. (2d) 81; City of Tarkio v. Cook, *supra*; Ark.-Mo. Power Corp. v. City of Kennett, *supra*; City of Plattsburg v. Peoples' Tele. Co., 88 Mo. App. 306; City of Lancaster v. Briggs & Melvin, 118 Mo. App. 570, 96 S. W. 314; City of St. Louis v. Western Union Telegraph Co., 149 U. S. 465, 37 L. Ed. 810; (the following cases from other jurisdictions) City of Louisville v. Louisville Automobile Club, *supra*; City of Bloomington v. Wirrick, *supra*; Ex parte Duncan, *supra*; Ex parte Holt, 74 Okla. 226, 178 Pac. 260; Kimmel v. City of Spokane, *supra*.]

But plaintiffs earnestly insist that the ordinance is a revenue measure. It does not appear on its face to be such. It clearly purports to be a regulatory measure "relating to traffic regulations and offenses against public safety and regulating the use of public streets and highways of the City of Springfield, Missouri, and providing for the installation, regulation and control of the use of parking meters

and parking meter zones; defining parking meter zones; authorizing the payment for parking meters and the installation thereof and for repairs and parts thereof, exclusively from the receipts obtained from the operation of said meters; and authorizing the setting aside of a part of said receipts as a special fund for the payment of said meters; providing for the enforcement thereof and for penalties for the violation thereof.''

Section 651 of said ordinance provides: "The 5c and the 1c fee required to be deposited as provided herein is hereby levied to cover cost of purchase, inspection, installation, operation, control, maintenance and use of the parking meters provided herein and the cost of services involved in checking up and regulating the parking of vehicles in the parking meter zones created hereby and other office and safety equipment and expense.''

Since the city has the power to regulate parking and in so doing, as a reasonable police regulation, "may designate streets or parts of streets within its limits upon which parking shall be either prohibited absolutely or else restricted to a limited time'' (City of Clayton v. Nemours, *supra*), it is obvious that the city has a right to exact such fee for parking as is incidental to and necessary for the purpose of such regulation. [City of Lamar v. Weidman, *supra*; City of Buffalo v. Stevenson, 100 N. E. 798, 207 N. Y. 258; Ex parte Holt, *supra*; Henkel v. City of Detroit, 13 N. W. 611; Ex parte Duncan, *supra*.] The meter deposit required by the ordinance is reasonable and the purpose for which it is levied is a legitimate expense incidental to the regulatory provisions of said ordinance and is a valid exercise of the police power granted to the city. Therefore, the ordinance should not be construed as a revenue measure unless the receipts from the meters be so substantially in excess of the amount required for the purposes mentioned in the ordinance as to take said operation outside of police regulation. [State v. Broeker, *supra*; Foster's, Inc. v. Boise City (Idaho), 118 Pac. (2d) 721; City of Phoenix v. Moore (Ariz.), 113 Pac. (2d) 935; Rock v. City of Philadelphia (Pa.), 191 Atl. 669; In Re Opinion of the Justices (Mass.), 8 N. E. (2d) 179; Hendricks v. City of Minneapolis (Minn.), 290 N. W. 428; Andrews et al. v. City of Marion et al. (Opinion rendered by Supreme Court of Indiana, April 15th, 1943, not yet published).]

The burden of establishing the fact, if it be a fact, that the ordinance is a revenue measure is cast upon plaintiffs. And this is true whether it is solely for the purpose of raising revenue or for the double purpose of regulating the parking of automobiles and raising revenue. The ordinance is valid if a regulation and void if a tax.

"A city has no inherent power to tax. This power rests primarily in the State and may be delegated to the city by constitutional provision or by statutory enactment.'' Such delegation of power "must be in clear and unambiguous terms, jealously guarded and strictly

construed.'' [Siemens v. Shreeve, 317 Mo. 736, 296 S. W. 416.] The power to tax ''should never be left to implication unless it be a necessary implication. The grant relied upon must be evident and unmistakable and all doubts will be resolved against its exercise and in favor of its taxpayers.'' [State v. Mound City, 73 S. W. (2d) 1017.] And ''any fair, reasonable doubt concerning the existence of power is resolved by the court against the corporation and the power is denied.'' [State v. McWilliams, 335 Mo. 816, 74 S. W. (2d) 363.] It is beyond question from the cases just cited, that in order to levy a tax or any fee or charge that assumes the character of a tax the city must have specific authority either by constitutional provision or statutory enactment. The parking fee, therefore, can be upheld if referable to the police power only. '' 'The imposition of such a tax may be referable to the taxing power, the police power or both; the police power alone, if the object is merely to regulate and the amount received merely pays the expense of enforcing the regulation, and the taxing power alone if its main object is revenue.' '' [St. Louis v. Green, 7 Mo. App. 468, 70 Mo. 562; City of Lamar v. Adams, 90 Mo. App. 35, l. c. 40; State v. Dix, 159 Mo. App. 573, 141 S. W. 445; Luckey v. Kansas City, 169 Mo. App. 666, 155 S. W. 873.]

The distinction between a license fee or charge and a tax, as that term is commonly understood, seems to depend primarily upon the purpose of the enactment and whether referable to the police power or the taxing power vested in the municipality. If the fee or charge is exacted for the prime purpose of enabling the municipal authorities to control the streets and regulate parking, such fee or charge is imposed in the exercise of the city's police power. [State v. Broeker, supra; City of Buffalo v. Stevenson, supra; St. Louis v. Western Union Telegraph Co., supra.]

While the declaration in the ordinance is not conclusive, it is at least persuasive. The ordinance provides that ''the 5c and the 1c fee required to be deposited as provided herein is hereby levied to cover cost of purchase, inspection, installation, operation, control, maintenance and use of the parking meters provided herein and the cost of services and regulating the parking of vehicles in the parking meter zones created hereby and other office and safety equipment and expense.'' According to the great weight of authorities, the cost and expenses of the items above enumerated for which the fees are levied are legitimate and necessary to carry out and enforce the provisions of the ordinance. [City of Plattsburg v. Peoples Tele. Co., supra; City of Lamar v. Weidman, supra; In re Opinion of the Justices (Mass.), supra; City of Phoenix v. Moore, supra; Brodkey v. Sioux City (Ia.), 291 N. W. 171 (modified 296 N. W. 352); State ex rel. Harkow v. McCarthy (Fla.), 171 So. 314; Hendricks v. City of Minneapolis, supra; Ex parte Holt, supra; Kirby v. City of Paragould (Ark.), 251 S. W. 374; Tele. Co. v. Public Service Com. (Wis.), 240

N. W. 411; Stephens v. Oklahoma City, 150 Okla. 199, 1 Pac. (2d) 367; American Motor Coach System, Inc. v. City of Philadelphia, 28 Fed. (2d) 736; Roadway Express, Inc. v. Murray, 60 Fed. (2d) 293; St. Louis v. Western Union Telegraph Co., *supra*; State of Missouri; ex rel. Laclede Gaslight Co. v. Murphy, 170 U. S. 178, 42 L. Ed. 955; Union Packet Co. v. City of St. Louis, 100 U. S. 423, 25 L. Ed. 688; Sprout v. City of South Bend, 277 U. S. 163, 72 L. Ed. 833, 62 A. L. R. 45; City of Bloomington v. Wirrick, *supra*.]

The record discloses that 895 meters were installed the latter part of July and placed in operation about July 27, 1940; that in April, 1941, there were 100 additional meters purchased and installed, and in June, 1941, 40 additional meters were installed. The purchase price of the meters was $60 each, making a total cost of meters purchased, $62,100. The total collections for July and August (the meters were operated only three or four days in July) amounted to $3716.15, of which the meter company was paid $2787.11. Each month 75 per cent of the total receipts were paid over to the company. Mr. Jared, the City Auditor, stated that the total collections for the entire period since parking meters have been in operation (that is from the last week in July, 1940, until this cause was tried on the 24th day of January, 1942) amounted to $63,006.39, covering a period of approximately eighteen months, and at that time a total payment of $47,255.04 had been paid on the purchase price of the meters. Witness Jared estimated that at the present rate of payment it would take about five months "maybe a little longer", to complete the payments to the company. 25 per cent of the total collections from the meters were retained by the City presumably for the operation and supervision of the meters.

The evidence further shows that in the year 1940 there was spent in the police department $117,348.25; the amount spent for traffic control, $6048.67. Mr. Jared estimated the cost of the police department for the year 1941 at $116,200 and for traffic control approximately $8250. A lengthy itemized statement of the expenses of metered parking was introduced in evidence by the defendants at the close of which was a recapitulation of this expense which is as follows:

### "RECAPITULATION OF EXPENSES"

| | |
|---|---:|
| Police Department | $20,417.94 |
| Traffic Painting | 1,075.80 |
| Investment & Maintenance of meters | 17,300.00 |
| Collection Expense | 3,854.35 |
| Street Dept. (cleaning streets in meter zones) | 7,782.28 |
| Total Expense | $50,430.37 |

As we view the record this is the substance of the substantial evidence from which the court is to determine whether the ordinance

is a revenue measure. The evidence is rather voluminous, much of it is guess work or estimates based upon doubtful or inaccurate information. Even the testimony relative to the life of the meters is not reliable. Obviously, during the period immediately following the installation of the meters the cost of maintenance, replacements and repairs would be at a minimum; and we are not unmindful of the fact that it was at a time when traffic was heavy and parkings were frequent, which would augment the receipts. At this time, meters having been longer in use, replacements may have been more numerous from general wear and tear and expense of maintenance and repairs increased while gasoline rationing, rubber conservation and restricted traffic may have reduced receipts to a minimum. We cannot hold from the evidence before us that the ordinance is a revenue measure. As said in the case of Hendricks v. City of Minneapolis, *supra*:

"In a case of this kind, with no actual trial of the system and the claims of plaintiff and defendant in conflict as to the reasonableness of the fee, it would require a clear showing by the plaintiff to demonstrate that the fee is too high. It would not be enough to show that the fee will exceed the cost for one period, or by a small amount. It must be made plain that the scheme of the ordinance is such that receipts will continuously and by a substantial amount exceed the cost of installation, maintenance, and regulation.

"The city may intend by this means to pay for the whole cost of the regulation of parking—the cost of the machines, their repair, the pay of the policemen who will be required to enforce the ordinance, and generally the expense of providing and keeping clear places in which drivers may park. In the face of the city's showing, by affidavits narrating the experience of other cities with parking meters, we can not now say that it clearly appears that the fee is a tax."

The evidence also tended to show that prior to and at the time the parking meter ordinance was passed the purpose of defendants was to collect a sufficient amount from the meters, over and above the expense incident to the regulatory provisions of the ordinance, to enable the city to reduce or repeal the gasoline tax then being collected. If that was the purpose in adopting the ordinance we would be constrained to say in the language of Judge STURGIS, Commissioner in the case of State ex rel. Marlowe v. Himmelberger-Harrison Lbr. Co., 58 S. W. (2d) 750: "This may be a laudable purpose from one standpoint, but from a legal standpoint it constitutes legal fraud." [Russell et al. v. Frank et al., 154 S. W. (2d) 63.] However, we are inclined to take the more charitable view that the primary purpose was to solve the enormously difficult and purplexing problems incident to growing traffic.

It is our conclusion that plaintiffs have failed in their effort to show that the ordinance is a revenue measure. We have carefully examined the abstract and briefs furnished us, and studiously read the

many citations therein as well as others, and we find, upon the record before us, that the judgment of the trial court should be affirmed. It is so ordered. *Smith, J.,* concurs; *Blair, P. J.,* concurs in separate opinion.

### SEPARATE CONCURRING OPINION.

BLAIR, P. J.—The main opinion shows great labor on the part of the author, and I concur therein and agree to the affirmance of the judgment in this case.

There is one matter, however, that I do not think is made as clear as it should be, and that is: What was done by defendant City of Springfield in reduction of the revenue from the gasoline tax of the city, when such gasoline tax was reduced from one cent a gallon to one-half cent per gallon.

That matter was not before the trial court and, as such alleged reduction in the gasoline tax was made after the trial of this case, it should not be considered on appeal. The general rule is stated in 3 C. J., page 693, Sec. 582, as follows:

"The rule that questions not raised in the lower court will not be considered on appeal generally applies, sometimes by express statutory provision, in chancery cases as well as at law."

Two Missouri cases are cited under Note 48, to-wit: Kansas City v. Marsh Oil Co., 140 Mo. 458, 41 S. W. 943; and Burdoin v. Trenton, 116 Mo. 358, 22 S. W. 728. These cases fully support the general rule as laid down in Corpus Juris above. The same rule is laid down in 4 C. J. S., page 434, sec. 229.

Our own statute, Section 1227, Revised Statutes 1939, is as follows:

"No exceptions shall be taken in an appeal or writ of error to any proceedings in the circuit court, except such as shall have been expressly decided by such court."

Tidwell v. Waldrup, 151 S. W. (2d) 1092, and McClure v. Ennis Real Estate & Investment Co., 19 S. W. (2d) 531, Missouri cases also, support the general rule.

Therefore, the question of what later was done by defendant City of Springfield toward lowering the gasoline tax, because the loss of revenue therefrom was largely made up by receipts from the parking meters, was not before the trial court, and should not now be considered by this court.

All that was before the trial court, on the subject of reduction of the gasoline tax, was rather vague statements as to what *might* be done with the gasoline tax, in the event that the income from parking meters exceeded the cost of the operation, maintenance and replacement of such parking meters. The *results* of the operation, maintenance and replacement of such parking meters were not before the trial court.

If it had been before the trial court that parking meters as operated, maintained and replaced, returned an income in excess of the cost thereof, a different question might be before this court. Under the evidence which was before him, the trial chancellor cannot now be convicted of error in finding for defendants, and his judgment should be affirmed.

For this reason, and also for the reason given in the majority opinion, I fully concur in affirming the judgment of the trial court.