THE COMMISSIONERS OF THE PALISADES INTERSTATE PARK, Respondent, *v.* MURRAY LENT, Appellant.

State parks — motor vehicles — State has right to require special permit to use automobile in State park — action to enjoin operation of automobiles for hire in State park without permit — defense that permit was accompanied by unreasonable conditions should be pleaded — statute creating Commissioners of Palisades Interstate Park broad enough to authorize rule requiring permit for operation of automobiles for hire within park — restriction of such automobiles to specific routes different in case of different operators not unreasonable.

1. The State has the right to prohibit the use of automobiles, except upon such reasonable conditions as it may see fit to prescribe, on roads within an area dedicated to the special purposes of a park and, in addition to the ordinary license required for an automobile, may require that a special permit be secured.

2. In an action by Commissioners of a State park to restrain the defendant from operating automobiles for hire throughout the park without a permit, granted on reasonable conditions, a defense simply tendering the issue that as matter of law defendant was entitled to so operate his cars, cannot be maintained. If the defendant desired to assert that the power exercised by the plaintiff of requiring permits was not what it seemed to be on the face of the complaint but was accompanied by such unreasonable conditions that he ought not to be required to comply with them, it was his duty to plead such defense.

3. The statute (L. 1900, ch. 170, as amended) created the Commissioners of the Palisades Interstate Park with corporate powers for the purpose of acquiring lands and making them available for enjoyment as a State park and is to be interpreted as giving such Commission an authority broad enough to embrace its action in adopting a rule that " No person shall operate a bus, taxicab or other vehicle for the transportation of passengers or property for hire within the Park without having first received a permit from the Commissioners," and also the supplementary regulation, enforced by its executive officials, that no such permit would be granted to such persons operating cars for hire except on the condition that car movements should be limited to certain specified routes which were not necessarily the same in the cases of different operators. The Commission was charged with the duty not only of general oversight over this large park but especially with the duty of supervising and regulating the use of highways located therein and it was not an unreasonable restriction to limit cars operated for hire to specific routes different in the case of different operators. It might very well discriminate between automobiles privately operated and those which were operated habitually and as a matter of business simply for the sake of making a profit.

*Comrs. of Palisades Interstate Park* v. *Lent,* 209 App. Div. 883, affirmed.

(Argued December 3, 1924; decided February 25, 1925.)

APPEAL from a judgment, entered July 2, 1924, upon an order of the Appellate Division of the Supreme Court in the second judicial department, reversing a judgment in favor of defendant entered upon a dismissal of the complaint by the court on trial at Special Term and directing judgment in favor of plaintiff.

*Graham Witschief* for appellant. The highways in Palisades Interstate Park possess no advantage over streets and highways generally in the State of New York respecting the right to use them. and the power to regulate such use. (*People* v. *Kerr,* 27 N. Y. 188; *Johnson* v. *City of New York,* 186 N. Y. 146; *Holmes Electric Co.* v. *Williams,* 228 N. Y. 407; *Pocantico Water Works Co.* v. *Bird,* 130 N. Y. 249; *Economic P. N. C. Co.* v. *City of Buffalo,* 195 N. Y. 286; *Robins* v. *United States,* 284 Fed.

Rep. 39; *Canfield* v. *United States,* 167 U. S. 518.) By chapter 79 of the Laws of 1922 the Legislature empowered the plaintiff to make rules for the use and government of the park and of such parts of State, county and other public highways as lie along or within the boundaries of the park. The statute merely confers upon the plaintiff the power to regulate, but the power to regulate does not include the power to prohibit. (*Johnson* v. *City of New York,* 186 N. Y. 139; *Village of Carthage* v. *Central N. Y. Tel. Co.,* 185 N. Y. 448; *Thousand Island Park Assn.* v. *Tucker,* 173 N. Y. 203; *People ex rel. Schwab* v. *Grant,* 126 N. Y. 473; *Yellow Taxicab Co.* v. *Gaynor,* 159 App. Div. 893; *Peace* v. *McAdoo,* 110 App. Div. 13.)

*Joseph A. Warren, Michael F. Dee* and *George A. Blauvelt* for respondent. There is not presented in the record before this court any question for review as to the reasonableness of the acts of plaintiff's officials in refusing a general permit to the defendant. (*City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.,* 152 N. Y. 276.) The courts in this and other jurisdictions have uniformly held that the Legislature may regulate or even entirely prohibit the use of highways by carriers for hire. (*People* v. *Rosenheimer,* 209 N. Y. 115; *Yellow Taxicab Co.* v. *Gaynor,* 159 App. Div. 893; *Mason–Seaman Trans. Co.* v. *Mitchell,* 89 Misc. Rep. 230; *Packard* v. *Banton,* 44 Sup. Ct. Rep. 257; *Robins* v. *United States,* 284 Fed. Rep. 39; *Public Service Comm.* v. *Booth,* 170 App. Div. 590.)

Hiscock, Ch. J. In this case the Appellate Division, reversing the action of the Special Term, has upheld the right of the plaintiff to forbid the operation for hire of automobiles in a State park under its supervision except under a permit of a restricted character.

By chapter 170 of the Laws of 1900 and acts amendatory thereof the plaintiff was created with corporate powers for the purpose of acquiring lands and making them

available for enjoyment as a State park. At the time of the commencement of this action it had acquired nearly 40,000 acres under this power and for this purpose. A large part of this land was left in a natural state and was extensively used for camping purposes, it appearing that during the summer season preceding the trial of this action there were so-called " group camps " which alone were occupied by nearly 70,000 campers of whom, judging from the names of the groups, many were boys and girls, and the total number of people visiting the park during that season was 4,878,384 who, on some occasions, used as many as 11,000 cars in a day.

As part of the powers and duties conferred upon it of making rules for the use and government of the park plaintiff was expressly authorized to make rules for the " use and government * * * of such parts of the State, county and other public highways as lie along or within the boundaries of such park;" there being in the neighborhood of thirty miles of improved roads in addition to other roads of a more primitive character and usable only by wagons. Claiming to act under these powers the plaintiff adopted a rule that " No person shall operate a bus, taxicab or other vehicle for the transportation of passengers or property for hire within the Park without having first received a permit from the Commissioners," and by ratification if not by original action it adopted the supplementary regulation enforced by its executive officials that no such permit would be granted to such person operating cars for hire except on the condition that car movements should be limited to certain specified routes which were not necessarily the same in the cases of different operators. Defendant, who was engaged in operating automobiles for hire, secured such a restrictive permit limiting him to a certain specified route. Having violated this restriction his permit was canceled and he then insisted upon and attempted to exercise the right of operating his cars generally throughout the park

without any permit and which conduct was followed by this injunctive action.

The pleadings in this case properly presented only the single question whether the State or this plaintiff, acting as its agency, could require persons desiring to operate cars for hire within a State park to secure a permit therefor. They presented no issue of an unauthorized, unreasonable or discriminatory character of restriction imposed by the plaintiff as a condition of granting such permits, and there applied the presumption that public officials and agencies will discharge their duties and powers in a proper and legal manner. If the defendant desired to assert that the power exercised by the plaintiff of requiring permits was not what it seemed to be on the face of the complaint but was accompanied by such unreasonable conditions that he ought not to be required to comply with them, it was undoubtedly his duty to plead such defense, which he did not do. (*City of Buffalo* v. *N. Y., L. E. & W. R. R. Co.*, 152 N. Y. 276.) On the pleadings he stood in the attitude of simply tendering the issue that as matter of law he was entitled to operate his cars for hire throughout the park without obtaining a permit granted on reasonable conditions. This proposition he could not possibly maintain for it is established beyond the necessity for discussion that the State has the right to prohibit the use of automobiles upon highways except upon such reasonable conditions as it may see fit to prescribe. (*People* v. *Rosenheimer*, 209 N. Y. 115.) And if this right covers ordinary public highways devoted to general and widely varying uses there can be no doubt that it applies to roads within an area dedicated to the special purposes of a park and that in addition to the ordinary license required for an automobile the State or its authorized agency may require that an additional and special permit be secured.

But notwithstanding this condition of the pleadings and without objection the court did enter upon a consideration

of the question whether the plaintiff had the right to adopt and to ask the aid of the court in enforcing its rule requiring permits to operate automobiles in the park as modified and supplemented by the further regulation limiting such permits in the case of a person like the defendant to a specified route. Therefore, we shall consider the contention now urged by defendant that it did not have such right.

The first question which we encounter involves an interpretation of the statute creating plaintiff and is the one whether the Legislature intended to confer upon the plaintiff the power to restrict a person like defendant to one road even though such restriction, if authorized, might be proper. Support for the proposition that the Legislature by the general language authorizing plaintiff " to make rules for the use and government of  *  *  * public highways " within the park did not intend to confer upon it such power is sought by reference to section 22 of the General Highway Traffic Law (Cons. Laws, ch. 70). That section gives specific power to local authorities to enforce " one way " traffic through certain streets and which regulation being somewhat akin to the one complained of here it is argued that the Legislature would have used more specific words in the present statute if it had intended to give the power which plaintiff is attempting to exercise.

Notwithstanding this illustration and whatever else may be said in opposition thereto, we think that the statute is to be interpreted as giving the plaintiff an authority broad enough to embrace its present action. It is a matter of common observation that the conditions and restrictions which accompany and are imposed upon the use of roads in a park are quite different than those which commonly prevail in the use of an ordinary city street. People are accustomed to regulations in one case which would seem very unusual in the other and it seems to us entirely permissible to assume that the

Legislature intended by general language to give to plaintiff the power which it is seeking to exercise even though it deemed it politic and prudent to employ specific words in conferring upon local authorities the power to enforce so radical a regulation as would prevent people from using an ordinary street except for travel in one direction. We think that general language in the present case applicable to special conditions is as potent and comprehensive as in the other was the special language applicable to general conditions.

Then we come to a consideration of the ordinary question applicable to such regulations as those adopted by plaintiff whether they were reasonable and fair and within the limits of good judgment and sound discretion. . While we assume that the regulations adopted by plaintiff were of a character which permitted evidence that they were unauthorized or unreasonable (*Matter of Stubbe* v. *Adamson,* 220 N. Y. 459) no motion to dismiss plaintiff's complaint on that ground was made and there was no finding or request to find by the defendant that as matter of fact they were unreasonable and he is compelled to argue that the more general findings, as distinguished from a specific one such as we have mentioned, show that the regulations adopted by plaintiff were so extreme, unreasonable, unfair and discriminatory that they exceed the limits of judgment and discretion which were necessarily invested in plaintiff and therefore should not have been made. To put it more in terms of legal procedure he is compelled to argue that the surviving findings of fact do not sustain the conclusion of law adopted by the Appellate Division that plaintiff had the right to make these regulations and that the court should aid it in enforcing them. We do not think that he can sustain such a proposition.

As we have pointed out the plaintiff was charged with the duty not only of general oversight over this large park but especially with the duty of supervising and

regulating the use of highways located therein. Amongst the obvious details of such duty was the one to make regulations which might be appropriately and fairly conducive to safety, to avoidance of congestion and accidents, and to distribution of service in such a manner as in connection with the busses operated by itself would best serve public convenience. The character of the regulations which would best accomplish these ends was very greatly a matter of opinion. In considering them we think that plaintiff might very well discriminate between automobiles privately operated and those which were operated habitually and as a matter of business simply for the sake of making a profit. The former, traveling around and through the park for purposes of sightseeing and recreation would simply be utilizing the purposes for which the park was created; the latter would be engaged in a business which was not necessarily incidental to those purposes and which operation therefore might be subordinated to the privileges exercised by the former class of visitors. This being so we do not think that it was an unreasonable restriction to limit cars operated for hire to specific routes different in the cases of different operators. We can see how the plaintiff in the exercise of its judgment might conclude that this was the best way in which to accomplish the ends which were confided to its management. What is reasonable is in large part tested by what is ordinary usage and common experience and in these days when, as we all know, very exact rules are adopted to govern motor traffic in congested centers, plaintiff's regulations seem a quite moderate exercise of power. The " one way street " and the " no left turn " have prepared us to accept the restrictions of which defendant complains as quite reasonable and in accordance with common experience. (*Robbins* v. *U. S.*, 284 Fed. Rep. 39.)

It is suggested that if these regulations are sustained as to defendant the plaintiff will have the right to prohibit

entrance into the park of one who is simply seeking to pass through it on a journey between points situate on either side or one who desires to visit the park for ordinary purposes of recreation and sightseeing, provided he is traveling in an automobile hired for the occasion rather than in one owned by himself. The question of power under such circumstances is not now before us. Quite possibly there may be a distinction between one engaged in the general business of operating cars for hire and one who, on some particular occasion, hires a car for his private use in the park which is in harmony with the general purposes for which the park has been established. We can consider that question when it is presented.

We think that the judgment should be affirmed, with costs.

Cardozo, Pound, McLaughlin and Crane, JJ., concur; Andrews and Lehman, JJ., dissent.

Judgment affirmed.