DELAWARE-HUDSON STEAMSHIP COMPANY, INC., Respondent, v. COMMISSIONERS OF THE PALISADES INTERSTATE PARK, Appellant.

Second Department, January 13, 1928.

Parks — regulation — Commissioners of Palisades Interstate Park have power to limit number of steamers landing at Bear Mountain Park dock — contract entered into between Commissioners of Palisades Interstate Park and third person, chartering boats and providing for exclusive docking privileges, excepting Hudson River Day Line steamers and excursion boats, is not illegal (Laws of 1900, chap. 170, as amd. by Laws of 1920, chap. 283).

The defendants, Commissioners of Palisades Interstate Park, have control and are in possession of Bear Mountain Park. For the purpose of passenger transportation to and from the park, the Commissioners operated two steamers, but that venture being financially unsuccessful they entered into a charter agreement with a third person whereby they chartered steamers under an agreement that the Commissioners would not grant permission to any other steamer or steamers, with the exception of steamers of the Hudson River Day Line and excursion steamers, to dock at Bear Mountain. Plaintiff, contending that the docks are.public property and that it has the right to land boats there, seeks an injunction to compel the defendants to permit it to use Bear Mountain dock.

Under chapter 170 of the Laws of 1900, as amended by chapter 283 of the Laws of 1920, the defendants have the power to provide and operate facilities for the use of the park by the public " including any and all means of transportation to, from or in said park." The power thus vested in the

**536** DELAWARE-H. SS. Co., INC., *v.* COMRS. OF PALISADES PARK.

Second Department, January, 1928.                    [Vol. 222]

Commissioners gave them the right to grant exclusive docking privileges to the person to whom they chartered the two boats. Indeed, it is in the public interests that a limited right be granted for the use of the dock in order that the public may have convenient transportation at a reasonable rate to and from the park and in order that an adequate service may be maintained for that purpose.

APPEAL by the defendant from an order of the Supreme Court, entered in the office of the clerk of the county of Orange on the 4th day of August, 1927.

*Augustus L. Richards [Oscar R. Ewing* with him on the brief], for the appellant.

*Joseph A. McCabe [John E. Mack* with him on the brief], for the respondent.

KAPPER, J. The defendant is in possession and control, as a State agency, of the State park known as Bear Mountain Park. The extent of this park and its wide public use are stated in the opinion in the suit brought by the present defendant against Lent (*Commissioners, etc.,* v. *Lent,* 240 N. Y. 1, 3.) Since the creation of the defendant in 1900 (Chap. 170), one of its apparently difficult problems has been that of securing and providing adequate passenger transportation service between the city of New York and the park which is located about fifty miles from the city on the west side of the Hudson river. For a time the Commission itself undertook to operate boats to meet this traffic, but such operation proved a financially losing venture. On January 20, 1926, the Commission entered into a contract or charter party with the McAllister Navigation Co., Inc., which is attacked in this litigation as conferring an unjust and discriminatory right of landing boats at the dock of said Bear Mountain Park. This " charter party," in which the Commission is named as " owner " and the McAllister Company as " charterer," provides:

" 17. The Owner shall permit the Charterer, free of all costs and expense, to dock said steamers, and any and all other steamers owned or controlled by the Charterer which are operated in said service at the same rate of fare to the public as said steamers CLERMONT and ONTEORA, at the Owner's landing at Bear Mountain, *and shall not grant such permission to any other steamer or steamers,* with the exception of the steamers of the Hudson River Day Line; provided, that nothing in this paragraph shall prohibit, or apply to, the granting of permission to excursion steamers, not engaged in regular service to said Park, to dock at said landing at Bear Mountain, and provided further, that the provisions of this paragraph shall not apply to any dock or landing of the Owner in said Park other than said landing at Bear Mountain."

The steamers *Clermont* and *Onteora*, referred to in the quoted paragraph, had theretofore been operated by the Commission, their future operation being granted by this charter party to the McAllister Company. It is apparent that the purpose of the charter party was to vest exclusively in the McAllister Company regular, frequent and scheduled transportation to the Bear Mountain Park dock with the single exception that the Hudson River Day Line, which operates its boats from New York city to Albany, stopping at various river landings, was also permitted to continue its regular landings, and that excursion steamers were also to be excepted from the grant or privilege. This charter party was entered into January 20, 1926, and is to continue until October 1, 1929, the service to be rendered to begin on the Sunday next preceding May thirtieth and to be continued daily up to and. including September fifteenth of each of said years. The plaintiff, claiming that the landing of its boats was being prevented by the defendant, brought this action for an injunction, the main object of which is an attack upon the validity of the said charter party.

Under regulations adopted by the Commission, applications were required whenever excursion boats carrying an excursion party wished to make a landing at the Bear Mountain dock. The plaintiff made various applications during the summer of 1926 and 1927 for that precise purpose; and its applications appear to have been granted not only with comparative frequency, but always.

The question involved is one of power in the Commission to limit or discriminate as to the landing of boats at the dock in question. The plaintiff contends that the dock is " public," and that the Commission is powerless to give the exclusive right of landing regular passengers, not brought to the park in an excursion party, to the McAllister Company, excepting, of course, the Hudson River Day Line which while landing its passengers at Bear Mountain Park does so at an adjacent dock of its own erection. In the sense that the dock is public property, the plaintiff is correct in its characterization, but that does not mean, in my opinion, that the dock is a " public dock " so as to deprive the defendant of the authority to enter into the attacked agreement.

Under the act of its creation (Laws of 1900, chap. 170, § 5), the Commission was empowered simply " to preserve, care for, lay out and improve the said.park and to make rules for the use and government of the same." Further powers were lodged in the Commission by subsequent amendatory legislation, the principal one to which alone reference need now be made being chapter 283 of the Laws of 1920, which provided, *inter alia*, as follows: " The board of commissioners may also erect and operate elevators and

**538**   DELAWARE-H. SS. CO., INC.. *v.* COMRS. OF PALISADES PARK.

Second Department, January, 1928.                    [Vol. 222

escalators at such places in the park as the board may deem necessary or expedient and may provide and operate such other facilities, *including any and all means of transportation to, from or in said park,* for the use and enjoyment of such park by the public and for increasing the accessibility to the park of such public as the board may deem to be necessary or expedient, and the said board may also provide, at its discretion, by a proper rule or regulation, for the terms upon which, and the manner in which, all such facilities may be used.''

The italicised words were inserted in the last referred to amendment; and it is clear enough from that that the Commission was empowered to make provision for as well as operate means of transportation to and from the park. It was under this grant of power that it operated the two boats mentioned. Is it possible that the Legislature intended to grant this power to the Commission and at the same time subject it to the ruinous rivalry of other steamboat owners and captains who might be tempted to embark and discharge New York city passengers at the park? And if the purpose of the legislation was to give to the Commission the exclusive use of the park dock to conduct its own transportation business, it seems to me that when such operation proved impractical and bad financially the Commission could transfer such right as it did in the agreement in question.

Amongst other rights reserved to the Commission in the charter party is its power to fix the minimum number of trips and the time schedules of the charterer as well as the maximum rates of fare which are specified in the agreement. It is asserted by the president of the Commission that '' It was necessary in the opinion of the Commission to grant this concession in order to secure for the public the low rates prescribed and the certainty of regular service to the Park,'' and, as was said by another learned Special Term justice in litigation affecting this very agreement: '' It is quite apparent that without a provision making such privilege exclusive. daily transportation could not be furnished.'' (*McAllister Nav. Co., Inc.,* v. *Delaware-H. SS. Co., Inc.,* 131 Misc. 483, CALLAHAN, J.) The fact that the park is a public park does not prevent regulation even to the extent of exclusion. (*Commissioners, etc.,* v. *Lent, supra; Robbins* v. *U. S.,* 284 Fed. 39.) Just why precisely the same sort of regulation should not apply to the dock does not seem to me to be at all clearly asserted by the plaintiff.

While mention is made by the learned Special Term that the agreement in question was made without competition or opportunity to other steamboat companies to compete, the plaintiff's case does not proceed along that ground. The complaint predi-

cates the right to an injunction upon the sole charge that the defendant is preventing the plaintiff from making landings with its boats in the carriage of passengers on scheduled trips. It does not even assert a deprivation of the right to run excursions and land such excursionists at the dock in question under the Commission's regulations. The position of the plaintiff, as set forth in its brief (pp. 5, 6), is a concession of the right of the defendant to supervise and regulate within the boundaries of the park, but a denial of the right to close the dock to it for daily scheduled passenger trips. It was the theory of the learned Special Term that the park should be open and free to the public, and that the legislation under which the defendant was created and exists " does not provide for the exclusion of anyone from its facilities or docks; " and that the limitation of the use of the dock for purposes of daily scheduled trips, to the McAllister Company, was not in the public interests. It seems to me that the facts presented here indicate the contrary. In so far as concerns the open and free use of the park to the public no complaint whatever is made, nor is it shown or contended that the public is not fully and completely served under the agreement which the Commission has seen fit to make with the McAllister Company. The adequacy of the service now being rendered is unquestioned. The record before us, besides showing regularity of service and cheapness of rates under the agreement in question, furthermore shows that said agreement works a proper control of ticket contracts, supervision of boat service conducive to public health, safety, prevention of accident, and the comfort of passengers, elimination of confusion and danger at the Bear Mountain dock, which includes its policing, that department being under the Commission's control and direction, and such a general efficiency, care and handling of the visitors as could not safely and suitably be carried on if the docks were to be thrown open indiscriminately to any steamship carrier, plus the possibility of the breaking down of the regular service arranged for as the result of the animosities of rival boat companies. That public safety, security and comfort are enhanced by the Commission's control over dock landing seems the only permissible inference, and in so far as the claim is advanced that mere regulatory provisions will adequately meet the public service, the contention ignores all of these factors which have been pointed out, and the equally important item of additional expense for suitable policing which the State would have to meet.

In *Commissioners, etc.,* v. *Lent* (*supra*) it was pointed out that the Commission here was charged with the duty not only of general oversight " over this large park but especially with the duty of supervising and regulating the use of highways located therein."

That case had to do with the right of the Commission to exclude buses, taxicabs and other vehicles for the transportation of passengers or property for hire from the park. The power was upheld as " appropriately and fairly conducive to safety, to avoidance of congestion and accidents, and to distribution of service in such a manner as in connection with the busses operated by itself would best serve public convenience."

In *Robbins* v. *U. S.* (*supra,* 46), where the use of highways in the Rocky Mountain National Park was litigated, it was said: " Certainly the duty was imposed upon the Secretary to regulate the traffic on the highway in ·a manner that would best promote the safety and accommodation of the public, and it was competent, if deemed necessary or prudent, to limit the franchise *to one approved carrier.* This might be called for by the conditions obtaining at the park. Before a regulation can be regarded as invalid, it must appear that the Secretary has exceeded his authority."

The legislative grant of power to the Commission to provide in its discretion the terms upon which and the manner in which all " such facilities may be used," coupled with the power to provide and operate all facilities, including " any and all means of transportation to, from or in said park," seems to me of sufficient breadth to justify the making of the challenged agreement or charter party, and to uphold its validity.

The order should be reversed upon the law and the facts, with ten dollars costs and disbursements, and the motion for an injunction *pendente lite* should be denied, with ten dollars costs.

Young, Hagarty, Seeger and Carswell, JJ., concur.

Order reversed upon the law and the facts, with ten dollars costs and disbursements, and motion for an injunction *pendente lite* denied, with ten dollars costs.