**CITY OF HOUSTON, Roy Hofeinz and Jack Heard (Oscar F. Holcombe substituted in place of Roy Hofheinz), Appellants,**

v.

**JAS. K. DOBBS CO. OF DALLAS, Inc., Appellee.**

**No. 15810.**

United States Court of Appeals
Fifth Circuit.

May 8, 1956.

Homer T. Bouldin, Senior Asst. City Atty., Will G. Sears, City Atty., Geo. D. Neal, City Atty., Houston, Tex., for appellants.

Warren P. Cunningham, Jr., Houston, Tex., for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

This is an appeal by the City of Houston, its Mayor and Police Chief from an order granting a permanent injunction against the enforcement by them of a Houston city ordinance.

The facts are not in dispute. Appellee is an experienced and financially responsible purveyor of food, both in local airport restaurants and for serving passengers and crews on interstate airlines. It has been successfully engaged in this business for several years in Houston and in other airport terminal cities. Until recently it held a concession at the Houston City airport, a municipally owned airport whose operation and maintenance are authorized by the Texas statutes, Vernon's Ann.Civ.St. art. 1269h, under which it operated a restaurant and furnished meals for service aloft to many of the airlines. Upon completion of the new terminal building the City entered into a concession agreement with a competitor, giving it the right to operate the airport restaurant. Thereafter the challenged ordinance was passed seeking to give to this new concessionaire the exclusive right to serve meals at the airport and to sell articles of food to the airlines.

Under a caption and introduced by a preamble, both clearly showing it to be the City's purpose to outlaw any activity except those of the airport concessionaire within the city limits of Houston in the nature of selling food to be used on airlines using the municipal airport,[1] the

---

1. The ordinance, including caption and preamble, follows:

    Ordinance No. 1216

    "An ordinance requiring that food and food supplies for service to passengers on airplanes conducting flight operations at the Houston International (Municipal) Airport be procured solely from the concessionaire operating the restaurant and food preparation facilities in the new terminal building; prohibiting the procurement of such food supplies from any other source; prohibiting anyone else from delivering such food or food supplies; providing that any violation hereof shall constitute a misdemeanor; providing an effective date; and providing a penalty.

    "Whereas, there have been provided in the new Terminal Building at the Airport suitable facilities for the preparation of food and food supplies and the City has entered into a contract with a concessionaire for the operation of such facilities and of the restaurant in the New Terminal Building and such concessionaire is a position to furnish to the airlines conducting flight operations at the said Airport the food and food sup-

    plies for service by them to the passengers on their planes and to furnish the same at prices which are reasonable and to render a good and adequate service in connection therewith; and

    "Whereas, it is deemed proper and to the best interest of the City of Houston and to the best interest of an orderly operation of the Airport and the orderly conduct of the activities which must be there conducted that after commercial airline flight operations are commenced at the New Terminal Building, all of the airlines be required to procure their such food and food supplies from the City's said concessionaire rather than having diverse and sundry persons bringing such supplies on to the Airport or bringing into the Airport the vehicles appropriate for the delivery by them of such food and supplies to the airlines; Now, Therefore,

    "Be it ordained by the City Council of the City of Houston;

    "Section 1. No person shall, within the limits of the City of Houston, procure, directly or indirectly, any food or food supplies for service by any airline conducting flight operations at the Houston Interna-

ordinance forbade the procuring of food or food supplies anywhere in the city from any person other than the concessionaire and forbade the furnishing of such articles anywhere in the city by any other than the concessionaire and specifically forbade the taking of food onto the airport by any other person. Violations were made punishable by a $200 fine.

■ The City conceded on argument that the ordinance as applied to activities within the city limits other than within the confines of the municipal airport itself cannot be supported. It is clearly violative of the due process clause of the Fourteenth Amendment for the city to attempt to impose restrictions not reasonably related to the exercise of police, taxing or other powers possessed by it to the hurt of any proper and normal business activity. City of Shreveport v. Shreveport Ry. Co.;[2] Seattle Title Trust Co. v. Roberge;[3] and Smith v. Cahoon.[4]

■ The City contends, however, that, in spite of the fallibility of the ordinance as applied to the City as a whole, the provisions prohibiting deliveries on the airport itself are valid as an exercise of the City's control over its own property. This would doubtless be true if the operation of the airport is a proprietary activity, since the City could thus operate its business as it considered best.[5] Moreover, the proposition that the granting of an exclusive franchise to do business on public property is unconstitutional appears to be a novel one, the attack usually being on the validity of the franchise when considered in the light of the enabling statute. See Robbins v. United States[6] and Delaware-Hudson Steamship Company v. Commissioners of Palisades Interstate Park.[7]

■ However, we need not decide whether the ordinance would be valid if it forbade only the deliveries on the airport property itself because it is clear from the ordinance as a whole that it was designed to prevent sales activities by appellee and others anywhere in the entire city. We cannot say that the intent or purpose of the City would be carried out if this relatively minor part were saved. It must therefore all fall together as being violative of the provisions of the federal Constitution proscribing the taking of property without

tional (Municipal) Airport to the passengers on its planes from any other furnisher or source of supply save and except from the concessionaire with whom the City has entered into a contract for the operation of the restaurant and food preparation facilities in the new Terminal Building; and no person save and except the said concessionaire with whom the City has entered into a contract for the operation of the restaurant and food preparation facilities in the New Terminal Building shall deliver to any airline any food or food supplies for service by such airline to the passengers on its planes; and no person save and except the said concessionaire with whom the City has entered into a contract for the operation of restaurant and food preparation facilities in the new Terminal Building, shall take into or on the City's said airport any food or food supplies for delivery to any airplane for service to the passengers.

"Section 2. Any person violating any of the provisions of this ordinance shall be guilty of a misdemeanor and shall be subject to a fine of not more than Two Hundred ($200.00) Dollars.

"Section 3. This ordinance shall take effect and become effective on April 15th, 1955 (being the date on which the City has by another ordinance heretofore passed and approved, directed that all flight operations at the Airport will be discontinued at and from the old Terminal Building.)"

2. 5 Cir., 38 F.2d 945, 946, 69 A.L.R. 340.

3. 278 U.S. 116, 121, 49 S.Ct. 50, 73 L.Ed. 210.

4. 283 U.S. 553, 51 S.Ct. 582, 75 L.Ed. 1264.

5. It is not entirely clear whether the particular operation here in question on the airport itself is proprietary or governmental. Cf. Imperial Production Corp. v. City of Sweetwater, 5 Cir., 210 F.2d 917.

6. 8 Cir., 284 F. 39.

7. 222 App.Div. 535, 226 N.Y.S. 356.

due process of law, since it bears no reasonable relation to any power of regulation which the City possesses.

Appellant attacks the jurisdiction of the court on the well-recognized principle that courts will not normally enjoin the enforcement of criminal statutes or ordinances whose constitutionality is challenged. There is an equally well-recognized exception to this rule, as stated in the case cited by appellant in its brief, Spielman Motor Sales Co., Inc., v. Dodge, 295 U.S. 89, where on page 95, 55 S.Ct. 678, at page 680, 79 L.Ed. 1322, the Court says:

> "To justify such interference there must be exceptional circumstances and a clear showing that an injunction is necessary in order to afford adequate protection of constitutional rights." (Citing cases.)

The Court further says:

> "We have said that it must appear that 'the danger of irreparable loss is both great and immediate'; otherwise, the accused should first set up his defense in the state court, even though the validity of a statute is challenged."

The case before us presents a clear illustration of such exceptional circumstance as would make the general rule inapplicable.

The ordinance herein in question not only makes punishable by fine acts of the purveyor of food, but also the acts of the purchaser from any but the City's concessionaire. As alleged in the complaint, and as conceded by the City in open court, this complainant could not adequately contest the validity of the ordinance by violating it since the ordinance also made punishable by fine the act of any person purchasing food from complainant. It was alleged and admitted that "plaintiff could not in any event compel, nor reasonably expect, its customers, the air lines, to cause their employees to run the risk of arrest and criminal prosecution by continuing to procure food and food supplies from plaintiff, and such air lines would not do so. Therefore, in the absence of an injunction, plaintiff will, on the effective date of such ordinance, suffer the immediate loss of all its customers and business in Houston."

We think that under the peculiar circumstances of this case, the trial court was justified in finding that immediate and irreparable injury would result if the enforcement of the ordinance was not stayed.

The judgment is

Affirmed.