NATIONAL ASSOCIATION FOR the ADVANCEMENT OF COLORED PEOPLE, Appellant,

v.

MacDonald GALLION, Attorney General of Alabama and Mrs. Bettye Frink, Secretary of State, State of Alabama, Appellees.

No. 18576.

United States Court of Appeals
Fifth Circuit.

May 15, 1961.

Tuttle, Chief Judge, dissented in part.

Robert L. Carter, New York City, Arthur D. Shores, Birmingham, Ala., Fred D. Gray, Montgomery, Ala., Orzell Billingsley, Jr., Peter Hall, Birmingham, Ala., of counsel, for appellant.

Willard W. Livingston, Chief Asst. Atty. Gen., MacDonald Gallion, Atty. Gen., Gordon Madison and Leslie Hall, Asst. Attys. Gen., for appellees.

Before TUTTLE, Chief Judge, JONES, Circuit Judge, and MIZE, District Judge.

JONES, Circuit Judge.

In 1956 the Attorney General of Alabama brought suit in the Circuit Court of the 15th Judicial Circuit of Alabama, Montgomery County, against the National Association for the Advancement of Colored People, herein referred to as NAACP, a New York corporation, asserting that it was doing business in Alabama without qualifying as a foreign corporation, and seeking to enjoin it from conducting business and from exercising any of its corporate functions in the State of Alabama. On June 1, 1956, the day the bill of complaint was filed, the Alabama Circuit Court issued its Temporary Restraining Order and Injunction which prohibited the NAACP from conducting business, and from making application to qualify to do business, in Alabama. A demurrer to the bill was filed by NAACP, which also filed a motion to dissolve the restraining order. Before this motion was heard the State moved for the production of a large number of records and papers, including the records showing the names and addresses of the Alabama members and agents of NAACP. The court, after a hearing, entered an order requiring the NAACP to produce records and papers, including the records of its members and postponed the hearing on the motion to dissolve.

The NAACP then answered and admitted it had carried on activities and had established an office in Alabama. It denied that it was required to qualify as a foreign corporation but offered, if permitted, to do so. The production order was not complied with and for its failure the NAACP was adjudged in contempt by an order which imposed a fine of $10,000, and provided that the fine might be reduced or remitted if produc-

tion was made in five days but otherwise would be increased to $100,000. The NAACP complied, so it later contended, with the order to produce in all respects except as to the names of its members. It contended that it was protected by the United States Constitution from the making of this disclosure. A modification of the restraining order and a stay pending appeal were sought and denied. An application for a stay order was made to the Supreme Court of Alabama. While this application was pending the Circuit Court made a further contempt order and increased the fine to $100,000. The NAACP was not permitted, it seems, under the law of Alabama, to have a hearing on its motion to dissolve the restraining order until it had purged itself of contempt. The Supreme Court of Alabama refused to review the contempt judgment. Ex parte National Association for Advancement of Colored People, 265 Ala. 699, 91 So.2d 221; Id., 265 Ala. 349, 91 So.2d 214.

The Supreme Court of the United States granted certiorari and held that, on the record before it, the State could not require the production of the names of members and that the fine for contempt must fall. National Association for Advancement of Colored People v. State of Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488. The NAACP, in addition to asserting a constitutional immunity from disclosing the names of its members, attempted to challenge the validity of the restraining order. The Supreme Court declined to consider this question, saying:

"The proper method for raising questions in the state appellate courts pertinent to the underlying suit for an injunction appears to be by appeal, after a hearing on the merits and final judgment by the lower state court. Only from the disposition of such an appeal can review be sought here." 357 U.S. 449, 466, 78 S.Ct. 1163, 1174.

The Supreme Court of Alabama, on the remand from the Supreme Court of the United States, "again affirmed" the con-

tempt judgment on the ground that the United States court had been mistaken in considering that the NAACP had complied with the production order except for refusal to produce its membership lists. Ex parte National Association for the Advancement of Colored People, 268 Ala. 531, 109 So.2d 138. In a per curiam opinion, the Supreme Court of the United States held that the State was precluded from making the contention that the NAACP had failed to comply with the production order otherwise than with respect to the records of its membership. The judgment of the Supreme Court of Alabama was reversed. National Association for Advancement of Colored People v. Alabama, 360 U.S. 240, 79 S.Ct. 1001, 3 L.Ed.2d 1205. The NAACP had applied to the Supreme Court of the United States for a writ of mandamus to compel the Supreme Court of Alabama to comply with the mandate in the earlier case. This was decided in the same opinion as that dealing with the contempt judgment. The court refused to issue a writ of mandamus. In the concluding paragraphs the court said:

"Upon further proceedings in the Circuit Court, if it appears that further production is necessary, that court may, of course, require the petitioner to produce such further items, not inconsistent with this and our earlier opinion, that may be appropriate, reasonable and constitutional under the circumstances then appearing.

"We assume that the State Supreme Court, thus advised, will not fail to proceed promptly with the disposition of the matters left open under our mandate for further proceedings, 357 U.S. at pages 466, 467 [78 S.Ct. at page 1173–1174], and, therefore, deny petitioner's application in No. 674, Misc., [NAACP v. Honorable J. Ed Livingstone, Chief Justice of the Supreme Court of Alabama, et al.] for a writ of mandamus." 360 U.S. 240, 245, 79 S.Ct. 1001, 1004.

This decision of the Supreme Court became final upon the denial of a petition for rehearing on October 12, 1959. In response to the efforts of the NAACP to get the Supreme Court of Alabama to send down its mandate to the Circuit Court, the Clerk of the Alabama Supreme Court advised counsel for the NAACP "that this case will receive attention as soon as practicable, commensurate with the rest of the important business of the court." The cause in the United States District Court for the Middle District of Alabama resulting in the judgment from which this appeal was taken was commenced by the filing of a complaint by the NAACP on June 23, 1960. On July 11, 1960, the Supreme Court of Alabama remanded to the Circuit Court the cause remanded to it by the Supreme Court of the United States. In its order the Supreme Court of Alabama directed that the temporary injunction remain in full force pending final determination of the cause on the merits. Ex parte National Association for Advancement of Colored People, Ala., 122 So.2d 396.

Meanwhile there was other activity in the State Circuit Court. On April 9, 1958, the State filed a petition charging a violation of the restraining order by organizing or controlling the Alabama State Coordinating Association for Registration and Voting, which association was, the State asserted, a device and subterfuge to cover and hide operations by the NAACP which were enjoined by the restraining order. The State prayed that the NAACP be required to show cause why the NAACP should not be held in contempt for violating the restraining order by reason of this conduct. The NAACP filed a motion to dismiss the petition, primarily on jurisdictional grounds. We are not informed of any ruling on the motion to dismiss. In February 1960, while the original contempt matter was in the Supreme Court of Alabama with its mandate to the Circuit Court deferred because of other "important business of the court," the State pro-

pounded to the NAACP forty-two interrogatories with respect to its connection with the Alabama State Coordinating Association for Registration and Voting. We are not informed as to whether these interrogatories have been either answered or made the subject of objections or other attack.

In the complaint filed by the NAACP in the Federal District Court against the Attorney General and the Secretary of State of Alabama, it is asserted that the legal proceedings brought against it in the State Court are arbitrary and vindictive and hence in violation of due process of law, that no other action has been taken to oust from the State a foreign corporation which had failed to register and the discrimination against it was because of its promotion of equal rights and the eradication of distinctions based upon race. It is alleged in the complaint that, without a hearing, the NAACP was required to close its office in Birmingham, that it suffered the loss of membership and income from members and contributors in Alabama, and that its members are deprived of the right of voluntary association and the right to seek the privileges guaranteed by the Constitution and laws of the United States. An injunction was sought to restrain the Attorney General from proceeding to enforce the State Court restraining order or taking any other action to oust the NAACP from Alabama, and to enjoin the Secretary of State from refusing to register the NAACP as a foreign corporation. There was also a prayer to enjoin interference with the legal and constitutionally protected rights of the NAACP and its members.

The Attorney General and the Secretary of State moved to dismiss on the ground that the federal court lacked jurisdiction and that the contempt matter was, pursuant to the mandate of the Supreme Court of Alabama, again in the Circuit Court. The district court granted the motions to dismiss and, in an opinion filed on August 11, 1960,[1] set

---

1. N. A. A. C. P. v. Gallion, Attorney General of the State of Alabama, 190 F.Supp.583, 585.

forth the principles which it felt were decisive of the questions presented. The district court had no doubt but that federal jurisdiction might here be invoked to redress the deprivation of rights, privileges, or immunities guaranteed by the Constitution or laws of the United States. It was the view of the district court, however, that it should not, under the circumstances, exercise that jurisdiction. The reasoning of the district court was thus expressed:

"The real basis for plaintiff's seeking this Court's aid is the alleged unconstitutional action by the Courts of Alabama in not proceeding promptly; but the effect of the delayed action and 'dilatory tactics' is to deprive the plaintiff-corporation of its constitutional right to do business in the State of Alabama and to do so without the plaintiff-corporation having the right to obtain rulings upon and, if necessary, a review of those rulings upon the several constitutional issues raised.

"It should be noted that in this case the Supreme Court of the United States refused to pass on the constitutional issues raised by this plaintiff-corporation. The Court there said that the constitutional issues were not properly before it, and remanded the case to the state courts for further proceedings. N.A.A.C.P. v. Alabama, supra, [357 U.S. 449, 78 S.Ct. 1163, 2 L.Ed.2d 1488]. In making this determination, the Supreme Court recognized that the ultimate aim and purpose of the litigation is to determine the right of the State to enjoin petitioners from doing business in Alabama.

"It should also be noted that the Supreme Court in its last treatment of this litigation even went so far as to indicate to this plaintiff-corporation the route open to it in securing a prompt trial and review if appropriate.

\*   \*   \*   \*   \*

"If this assumption as made by the Supreme Court was or is er-roneous, the proper remedy in this particular case is to that Court by regular appellate procedures or extraordinary procedure ancillary to the prior remand.

"In addition to the above, it must be recognized that there are certain instances when a federal court should not exercise its jurisdiction, and this is particularly true in a case where an action is in the breast of a state court and one of the litigants in that case seeks to invoke the injunctive powers of the federal court. Stefanelli v. Minard, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138, and the authorities therein cited.

"This Court must and does now assume that the public officials for the State of Alabama (the judicial officers concerned with the case now pending in the state Courts, as well as the two officers that are parties to the present litigation) recognize that they are just as solemnly committed by their oaths taken pursuant to Article VI, Clause 3, of the Constitution of the United States to protect the constitutional rights of all citizens, as is this Court. It would be necessary for this Court to assume otherwise in order to justify granting plaintiff the relief it seeks."

■ The appellant, the NAACP, states its specification of error in an unusual but adequate way by stating that, "The District Court erred in failing to recognize that the infringement of constitutional rights suffered by appellant and its membership can be redressed only by the federal court exercising its jurisdiction, hearing this case on the merits, and granting the requested injunction prohibiting appellees from further barring appellant from conducting its lawful activity within the State of Alabama." It is stated on behalf of the NAACP, in its brief and argument, that the public officials of Alabama, including its judiciary, are committed to a policy of maintaining racial segregation at all costs, including, if need be,

defiance of federal authority. The NAACP is, so it says, a prime object of attack by the officials of Alabama. To persuade us of this so-called "Climate in Alabama" the NAACP inserts in its brief some thirty references to and quotations from Southern School News. We are unable to take judicial notice either of these excerpts or of the facts which they purport to relate. We are not convinced that we must say, as the NAACP insists, that its "remedy in the State courts is not merely inadequate, it is nonexistent." The Supreme Court has suggested that "The proper method for raising questions in the state appellate courts pertinent to the underlying suit for an injunction appears to be by appeal, after a hearing on the merits and final judgment by the lower state court. Only from the disposition of such an appeal," say the Supreme Court, "can review be sought here." The Supreme Court and the district court have assumed that the Alabama courts will proceed in the discharge of their duty to decide this litigation with reasonable dispatch. It is implicit in the assumption of the Supreme Court and expressed in the assumption of the district court that the State of Alabama and its officers, judicial as well as executive, will recognize and give effect to the federally guaranteed rights of litigants before its courts. We do not think we should indulge in a different assumption. If, as the NAACP fears, the Alabama courts render a judgment which deprives it of a constitutional right, the judgment may be reviewed and corrected by the Supreme Court of the United States. If, as the NAACP suggests as probable, the Alabama courts raise or sanction unjustifiable barriers to a determination of issues, or resort to other deliberate judicial foot-dragging, the NAACP will not be, as we will point out, deprived of a remedy.

█ The Supreme Court has, on many occasions, stated the principle that federal courts should refrain from determining constitutional questions arising from the interpretation and application of state statutes until the state courts have been afforded a reasonable opportunity to pass upon them. We think this is a case to which the stated principle applies. The NAACP is a New York corporation and does not deny that it has been doing business in Alabama without qualifying under State laws as a foreign corporation, although protesting that qualification is not required of it. The right, asserted by the State to oust NAACP and the right, asserted by NAACP, to qualify as a foreign corporation in the State, are matters which should be first litigated in the State court. In Harrison, Attorney General v. National Association for Advancement of Colored People, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152, abstention was directed although the case involved a Virginia statute which the district court found was enacted to impede school integration and nullify the effect of Brown v. Board of Education, 349 U.S. 294, 75 S.Ct. 753, 99 L.Ed. 1083. More reason here exists, we think, for giving the State courts an opportunity for determining the questions than were present in the Harrison case.

█ We entertain no doubt but that the district court had jurisdiction to entertain a complaint seeking an injunction against officers of a state to prevent the deprivation of or interference with a right created or guaranteed by the United States. But this should not be done unless there is a danger of irreparable injury which is imminent. Fenner v. Boykin, 271 U.S. 240, 46 S. Ct. 492, 70 L.Ed. 927. Only manifest oppression will justify the interference by a federal court with state administrative officers acting under color of office in a good faith effort to perform their duties. Hawks v. Hamill, 288 U.S. 52, 53 S.Ct. 240, 77 L.Ed. 610. There must be an exceptional circumstance and a clear showing of a necessity for the protection of constitutional rights for an injunction to justify interference by the issuance of the writ. Spielman Motor Sales Co. v. Dodge, 295 U.S. 89, 55 S.Ct. 678, 79 L.Ed. 1322. Such a necessity ap-

peared in City of Houston v. Jas. K. Dobbs Co., 5 Cir., 1956, 232 F.2d 428. The judicial doctrine of abstention, invoked in cases such as this, is in keeping with the spirit, although not required by the letter, of the Anti-Injunction Act.[2] This principle is exhaustively explored in T. Smith & Son, Inc. v. Williams, 5 Cir., 1960, 275 F.2d 397, and need not be further discussed here.

The district court entered an order of dismissal. This it should not have done. Jurisdiction should have been retained so that in this action or in such supplemental proceedings as may be initiated the appellant may be protected, as in the Harrison case; and to take such steps as may be required for the just disposition of the litigation should anything prevent a prompt state court determination as was provided in Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L. Ed.2d 1058, rehearing denied 360 U.S. 940, 79 S.Ct. 1442, 3 L.Ed.2d 1552. See also Martin v. Creasy, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186; County of Allegheny v. Mashuda Co., 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163; City of Meridian v. Southern Bell Telephone & Telegraph Co., 358 U.S. 639, 79 S.Ct. 455, 3 L.Ed.2d 562.

The situation here is not, we think, comparable with that presented in Hawkins v. Board of Control, 5th Cir., 1958, 253 F.2d 752. There Hawkins, a Negro, had been unsuccessfully attempting to obtain admission to the University of Florida Law School.[3] In its opinion reported in 350 U.S. 413, 76 S.Ct. 464, 100 L.Ed. 486, the Supreme Court held that Hawkins was entitled to admission under the rules and regulations applicable to other qualified candidates, and the cause

was remanded. The Supreme Court of Florida, quoting from Washington's Farewell Address, and undertaking to exercise a judicial discretion, denied Hawkins the right to enter the University and gave him the privilege of renewing his motion if he could show that his admission could be accomplished without doing great public mischief. The Supreme Court denied certiorari without prejudice to Hawkins' right to seek relief in an appropriate United States district court. 355 U.S. 839, 78 S.Ct. 20. Hawkins instituted suit in a district court seeking admission to the school on the same basis as other qualified candidates. The district court refused to receive evidence on Hawkins' application for a preliminary injunction and denied the injunction. This Court reversed and directed a prompt hearing. Hawkins v. Board of Control, 5 Cir., 1958, 253 F.2d 752. No question of abstaining to permit further state court litigation was in the case.

We are in agreement with the district court's decision that this matter should be litigated initially in the courts of the State. But for the reasons here set forth, the judgment will be vacated and the case remanded to the district court with instructions to permit the issues presented to be determined with expedition in the State courts, retaining jurisdiction meanwhile for the purposes here stated. The conclusions which we have stated are not to be regarded as holding or suggesting that each of the matters alleged in the complaint would constitute, if proven, a violation of a right which is protected by the Federal Constitution or congressional enactments. We do hold that federal questions are raised by the complaint.

Vacated and remanded.

---

2. A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments. 28 U.S.C.A. § 2283.

3. State ex rel. Hawkins v. Board of Control, Fla., 47 So.2d 608; Id., Fla., 53 So.

2d 116, certiorari denied 342 U.S. 877, 72 S.Ct. 166, 96 L.Ed. 659; Id., Fla., 60 So.2d 162, reversed 347 U.S. 971, 74 S. Ct. 783, 98 L.Ed. 1112; 350 U.S. 413, 76 S.Ct. 464, 100 L.Ed. 486, Id., Fla., 83 So. 2d 20, certiorari denied 350 U.S. 413, 76 S.Ct. 464, 100 L.Ed. 486; Id., Fla., 93 So.2d 354, certiorari denied 355 U.S. 839, 78 S.Ct. 20, 2 L.Ed.2d 49.

TUTTLE, Chief Judge (concurring in part and dissenting in part).

With deference to the views of my colleagues, I must dissent from that part of the opinion that affirms the action of the trial court in not proceeding to hear the case presented to it on the merits. I, of course, concur in all the propositions of law which are so well stated in the Court's opinion. My disagreement arises from the fact that the history of the litigation in the state courts has demonstrated that at the time of the filing of the within complaint the state courts were not affording the complainant reasonable opportunity to be heard on the merits of its complaint that it was being illegally deprived of its right to qualify as a foreign corporation under the Alabama laws.

The nub of the majority opinion I think is contained in the following statement:

"The Supreme Court has, on many occasions, stated the principle that Federal Courts should refrain from determining constitutional questions arising from the interpretation and application of state statutes until the state courts have been afforded a reasonable opportunity to pass upon them. We think this is a case to which the stated principle applies."

I think, with all deference, that this is a case to which the stated principle does *not* apply.

The Supreme Court, as pointed out in the majority opinion, in denying appellant's petition for mandamus said:

"We assume that the State Supreme Court, thus advised, will not fail to proceed promptly with the disposition of the matters left open under our mandate for further proceedings." 360 U.S. 240, 245, 79 S.Ct. 1001, 1004.

The assumption thus made by the United States Supreme Court has now clearly been proved to be incorrect. This record shows that although the Supreme Court of the United States finally disposed of the matter by a denial of a petition for rehearing on October 12, 1959, and in spite of efforts by the appellants to get the Supreme Court of Alabama to send down its mandate to the state trial court, the Alabama Supreme Court had failed more than eight months later to perform this simplest of ministerial acts, that is, to send down the mandate to the Circuit Court. In the meantime appellant was denied any opportunity to move towards a trial of the validity of the original injunction, already in effect for three years. No effort was made upon the hearing below to show how such an unparalleled delay in the performance of a normal clerical duty was justified. In the absence of such justification, I think that there is but one conclusion possible; the State Supreme Court *did* "fail" to proceed promptly with the disposition of the matters left open under [the United States Supreme Court] mandate for further proceedings," thus removing the basis assigned by that Court for its refusal to grant appellant's application for a writ of mandamus.

In such circumstances as this, I think the course of litigation in Hawkins v. Board of Control, the history of which is portrayed by the citations of its appearance in the Florida courts and the United States Supreme Court in footnote 3 of the majority opinion, teaches us that the matter is ripe for decision by a United States District Court. In the Hawkins case, the question of the admission of Hawkins to the University of Florida law school was pending in the State Supreme Court, following a decision of the United States Supreme Court holding that no further basis appeared for denying him such admission. Following another denial of his admission by the State court, which expressly retained jurisdiction, Hawkins applied to the United States Supreme Court for certiorari. The Supreme Court denied the application for certiorari "without prejudice to the petitioner's seeking relief in an appropriate United States District Court." [355 U.S. 839, 78 S.Ct. 20].

The United States Supreme Court thus not only approved, but itself suggested, a procedure for permitting a complainant who considered that he was being shunted aside for inordinate delays in the State courts to have the matter inquired into on the merits in a United States District Court.

In this case, I would have not the slightest doubt that the failure of the Alabama Supreme Court to make possible further proceedings in that State's trial court by its failure to take the simple ministerial act of sending down the mandate for a period of more than eight months, and then sending it down only after suit was filed in the United States Court, presented a classic example of a case in which the assumption that the State court would act promptly to permit a trial of the rights of an aggrieved party has been demonstrated to be false.

I, of course, agree that the judgment of dismissal must be reversed and set aside. I disagree with my colleagues only in that I think the trial court should have proceeded to a hearing on the merits of the complaint, requiring the appellant to participate further in the fiction that it had an opportunity to have a reasonably prompt hearing in the State courts.