Vast Voorhis, J. (dissenting).
My concern in this case is not with limitation of free speech nor whether aesthetic considerations are enough in themselves to justify zoning regulations in prescribed instances, but with the extent to which a municipality can go in restricting the use of private property. The ordinance whose validity is now being upheld prohibits the erection and maintenance of clotheslines in a front or side yard abutting a street. Exceptions may be granted, and we were told upon the argument that 26 exceptions have been allowed in Bye, with the practical result that this ordinance is enforced against few others, if any, than the appellants. Even if that be held not to undermine the ordinance, it seems to me to exceed zoning powers for municipalities such as this to dictate to owners of houses and lots where they may put their clotheslines. The validity of ordinances may be tested in court according to whether the exercise of power delegated to the municipality is reasonable or arbitrary (People ex rel. City of Olean v. Western N. Y. & Pa. Traction Co., 214 N. Y. 526; Commissioners of Palisades Interstate Park v. Lent, 240 N. Y. 1). In the case last cited it was said that “ What is reasonable is in large part tested by what is ordinary usage and common experience” (p. 8). What has happened here is that these defendants conceived the unusual idea of hanging what the majority opinion describes *471 as “ tattered clothing, old uniforms, underwear, rags and scarecrows ” across their yard as a form of protest against the amount of their taxes. The city, at the instance of other residents in the area, fought back by adopting this ordinance from the operation of which almost every other property owner applying for a permit has been excepted. Although the origin of this dispute is evidently political in nature, the validity of this ordinance is sought to be upheld entirely on the basis of aesthetic considerations, e.g., that the eye is offended by what hangs from these clotheslines. No cases have been cited from this or any other jurisdiction holding that a municipal corporation or political subdivision can direct house and lot owners where they shall hang their clothes. Aesthetic considerations, in a certain sense, underlie all zoning, usually in combination with other factors with which they are interwoven. Lot area, setback and height restrictions, for example, are based essentially on aesthetic factors. Occasionally public safety considerations are blended with aesthetics, such as the tendency of billboards to distract the attention of automobile drivers or of high hedges to block their view at street intersections. Aesthetic factors are given effect, in such cases, but have been limited to specific situations and not extended to anything which offends the taste of the neighbors or of the local legislature. One may assume, for example, that a clothesline ordinance would be invalid which permitted the hanging of white but not red blankets, or allowed shirts to be put out to dry after washing but not underwear. Probably, at least until the next step in zoning law, a municipality would be held unauthorized to direct house owners what colors their homes should be painted, or what kinds of trees or shrubbery they should be allowed to grow and where they should be planted. Nevertheless if they can be told where to hang their clothes in their yards, these items would be but a small step beyond the present holding, or to prescribe /what architectural designs should be adopted so as to harmonize with the designs of the neighbors. To direct by ordinance that all buildings erected in a certain area should be one-story ranch houses would scarcely go beyond the present ruling as a question of power, or to lay down the law that they should be all of the same color, or of different colors, or that each should be of one or two or more color tones as might suit the aesthetic predilections of the city councillors or zoning boards of appeal.
*472 This ordinance is unrelated to the public safety, health, morals or welfare except insofar as it compels conformity to what the neighbors like to look at. Zoning, important as it is within limits, is too rapidly becoming a legalized device to prevent property owners from doing whatever their neighbors dislike. Protection of minority rights is as essential to democracy as majority vote. In our age of conformity it is still not possible for all to be exactly alike, nor is it the instinct of our law to compel uniformity wherever diversity may offend the sensibilities of those who cast the largest numbers of votes in municipal elections. The right to be different has its place in this country. The United States has drawn strength from differences among its people in taste, experience, temperament, ideas, and ambitions as well as from differences in race, national or religious background. Even where the use of property is bizarre, unsuitable or obstreperous it is not to be curtailed in the absence of overriding reasons of public policy. The security and repose which come from protection of the right to be different in matter of aesthetics, taste, thought, expression and within limits in conduct are not to be cast aside without violating constitutional privileges and immunities. This is not merely a matter of legislative policy, at whatever level. In my view, this pertains to individual rights protected by the Constitution.
Aesthetic factors have always played an important part in zoning, as they have in the licensing of television and radio. Theatre and entertainment, as well as other forms of music, art, philosophy and literature are closely involved in aesthetics, which are not a veneer but are fundamental to the human mind and spirit. Nor are aesthetics confined to landscape gardening, tract development or architectural design. The avoidance by courts, sometimes seemingly to the point of evasion, of sustaining the constitutionality of zoning solely on aesthetic grounds has had its origin in a wholesome fear of allowing government to trespass through aesthetics on the human personality. In this instance, hanging tattered clothing, underwear, rags and scarecrows on a clothesline can scarcely be regarded as articulating a protest against excessive taxation, but to prohibit it by law upon the ground that it offends the aesthetic sensibilities of the neighbors or of the public officials of the municipality means — unless well defined and effectively enforced limits are *473 placed upon this power to rule aesthetics by government — opening the door to the invasion by majority rule of a great deal of territory that belongs to the individual human being. It was once said of a famous lady of history that she had so much taste, and all of it so bad. Individual taste, good or bad, should ordinarily be let alone by government.
In authorizing the regulation of setback lines, yard areas, height of buildings and many permitted uses, the dominant factor has often been and should be aesthetic. But it is important not to allow general or unlimited power in government to regulate aesthetics in zoning or other departments of municipal administration. Extending aesthetic factors to the regulation of clotheslines suggests that zoning power, in the future, may extend to many other types of regulation also, since municipal boards and councils are being authorized in large degree to impose their ideas of aesthetics, and may be expected to do so on an expanding scale to placate the wishes of other property owners who constitute a larger segment of the electorate. Unless clotheslines create traffic or health hazards, it seems, to me that they should not be interfered with by law in suburban or rural areas. More important than this, however, does it seem that extensions of categories of local legislation for purely aesthetic purposes should be defined and limited, and, if they are to be enlarged, it should not be under reasoning which sets no ascertainable bounds to what can be done or attempted under this power.
The judgments of conviction of appellants should be reversed and the charges against them dismissed.
Chief Judge Desmond and Judges D'ye, Burke, Foster and Scileppi concur with Judge Fuld ; Judge Van Voorhis dissents in an opinion. ________
Judgment affirmed!